*56*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| GLORIA L. GARCIA a/k/a | § | United States District Court<br>Southern District of Texas<br>FILED |
| GLORIA GUZMAN, | § | |
|  | § | **MAY 2 4 2004** |
| Plaintiff, | § | |
|  | § | **Michael N. Milby**<br>**Clerk of Court** |
| v. | § | |
|  | § | CIVIL ACTION NO. B-02-017 |
| UNITED STATES OF AMERICA, and | § | |
| YOLANDA PEREZ, as Postmaster, United | § | |
| States Post Office, Santa Rosa, Texas, and | § | |
| ELENA OLIVAREZ, as an employee of the | § | |
| United States Post Office, Santa Rosa, Texas, | § | |
|  | § | |
| Defendants. | § | |
|  | § | |

### RESPONSE TO THE UNITED STATES' RESPONSE IN OPPOSITION TO
### DEFENDANT ELENA OLIVAREZ'S MOTION FOR SUMMARY JUDGMENT

Defendant Elena Olivarez ("Olivarez") filed her motion for summary judgment asking the

Court to enter summary judgment holding that she was an employee of the United States as

defined by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, and that she is not a proper

party Defendant in this case. Defendant United States of America ("USA") filed its response in

opposition to the motion and attached to the response three contracts that had not previously been

disclosed during the discovery period of this case. Olivarez files this her response to the

opposition filed by the USA and argues that even with the existence of the contracts found by

USA, she was still an employee of the USA and is not a proper party Defendant in this case.

I.     **The existence of the contracts executed by Olivarez do not negate the fact that she was an employee of the USA since she could not understand the terms of the contracts, and even if she could, the terms are ambiguous or confusing.**

USA's argument in its response to the summary judgment seems to indicate that the mere presence of a contract establishes Olivarez's independent contractor status and points to ambiguous or conclusory language in the contract to support its argument. The language that the USA heavily relies on in its response is found in pages 20 and 23. The language of page 20 reads as follows:

"The offeror, by checking the applicable block, represents that he/she/they

[ ✓ ] Is                    [   ] Is Not

a self-employed contractor (that is, performs 51% or more of the word except for vacations and emergencies)"[1]

The definition of a self-employed contractor found on page 20 is ambiguous, if not confusing, when compared to the case law which defines an independent contractor.[2] Texas law requires that such an ambiguous term in a contract be"generally construed most strictly against its author and in such a manner as to reach a reasonable result consistent with the apparent intent of the parties."[3] In the instant case, Olivarez testified that when she began performing her duties at the Santa Rosa Post Office ("Post Office")she was contracted by an entity from Indiana but was then offered to work as an employee of the Post Office. If the Post Office wanted her to remain as an independent contractor, they would have not asked her to end her contractual relationship with

---

[1]  Contract A, 20.

[2]  RESTATEMENT (SECOND) OF AGENCY § 2

[3]  <u>Republic Nat'l Bank v. Northwest Nat'l Bank</u>, 578 S.W.2d 109, 115 (1978).

the Indiana entity and offer her employment.  Furthermore, the intent of the parties to treat

Olivarez as an employee was clearly established by the time the third contract was signed on

April 5, 1998, since the terms of the two previous contracts were not followed.

Even if the contracts terms were unambiguous, the existence of such detailed agreements

only further establishes Olivarez's status as an employee since such agreements for close

supervision or *de facto* close supervision of the employees's work indicate the relation of master

and servant.[4]  The contracts introduced by USA contain 31 pages of conditions or terms and cite

to the voluminous and detailed manuals mentioned in Olivarez's Memorandum in Support of her

Motion for Summary Judgment.[5]  However, Olivarez explains in the attached declaration that she

never remembers having reviewed the terms of the contracts with anyone much less checking off

any of the terms contained in the 31 pages that make up the April 1, 1994 contract.[6]

The other language that USA points to in its contracts is found in page 23 which reads as

follows:

"a.    Is the offeror an employee of the Postal Service or a member of the immediate

family of a Postal Service employee?

(___) Yes            (✓) No"[7]

Such language is a legal conclusion that is difficult for an unsophisticated party like Olivarez to

---

[4]  RESTATEMENT (SECOND) OF AGENCY § 220, cmt. "h."

[5]  Contract A, 8-9.  Although there were three contracts introduced by USA, most of the
terms of employment were delineated in the initial contract dated April 1, 1994, and only referred
to in the subsequent contracts.

[6]  Olivarez Declaration.

[7]  Contract A, 23.

understand. Furthermore, USA completely ignores the issue that all the contracts were written

entirely in the English language with no indication that any of them were ever translated into the

Spanish language for Olivarez to understand. The fact that Olivarez has a difficult time merely

speaking the English language was made clear to the USA during her deposition where she

testified through a duly sworn interpreter for the entire deposition.[8] Olivarez also claims in her

declaration that the majority of communications with her supervisors at the Post Office were

spoken in Spanish.[9] Therefore, USA and Olivarez's supervisors at the Post Office knew that she

could not understand the terms of the contract because they were written in English. But even

assuming *arguendo* that Olivarez could have understood the contract terms, the language on page

20 and 23 that USA heavily relies on is still ambiguous or conclusory at best. Therefore, USA

should not be allowed to use the contracts against Olivarez to refute her status as an employee of

the Post Office.

## II.    The conduct of the USA and Olivarez ignored the terms of the contracts and further established Olivarez's status as an employee.

Although the USA has now introduced contracts that it argues establish Olivarez's

independent contractor status, both Olivarez and the USA ignored most of the terms of the

contract.[10] Olivarez provides a declaration indicating the many terms that were not followed by

her or the USA during her employment at the Santa Rosa Post Office.[11] Olivarez also testified

_____

[8] Olivarez Depo. 2 and 5.

[9] Olivarez Declaration.

[10] Id.

[11] Olivarez Declaration.

during her deposition that throughout the time she was employed at the Post Office she

performed her duties between the hours of 6:00 a.m. or 6:30 a.m. to 8:00 a.m.[12] This is in direct

contradiction to the terms of the contract requiring her to work between the hours of 8:00 a.m.

and 4:30 p.m.[13] Olivarez also states in her declaration that she never received 2 weeks paid

vacation after 1 year of service as indicated in at least two of the contracts introduced by USA.[14]

She also never had to sign a daily work log as required in at least two of the contracts.[15]

　　　The USA's own discovery responses establish the fact that they did not follow the terms

of the contract.  For example, one of the terms found in the contracts is a mentioning to floor

maintenance as one of Olivarez's duties yet in their responses to a request for production asking

for documentation showing performed maintenance of the floor, USA provided two proposals

from contractors but not from Olivarez.[16] If USA was adhering to its contract, it would have not

asked for such proposals and would have asked Olivarez to perform the maintenance as indicated

in the contract.

　　　What this evidence and testimony reveal is that the USA intended to establish an

independent contractor status for Olivarez in name only while in practice supervising and

controlling her duties and performance just like any other employee of the USA.  In its response,

USA explains that such broad supervisory control, even on a daily basis, does not suffice to

---

[12]  Olivarez Depo. 6 and 59-60.

[13]  Contract A, 3.

[14]  Contract A, 29; Contract B, 7; Olivarez Declaration.

[15]  Contract A, 27; Contract C, 3; Olivarez Declaration.

[16]  USA Prod. 9, "F" and "G."

demonstrate control over the physical performance of the contractor.[17]  However, the case cited

by USA to support such a conclusion can be differentiated from the instant matter since in

Macharia the court relied on United States v. Orleans in which the U.S. Supreme Court was

careful to note that while the USA can hold a contractor responsible for compliance with the

specifications of a contract through precise conditions, the contractor was largely free to select

the means of its implementation.[18]  In the instant case, implementation was detailed in the

contract terms along with the many manuals and the tools, i.e. instrumentalities, provided by the

USA.[19]  Olivarez was simply not free to select the implementation of the contracts.

### III.   USA's argument in response to Olivarez's status as an employee is at times misleading or not supported by evidence or testimony.

One of the more conclusive factors in establishing Olivarez's status as an employee is the

glaring fact that all of her instrumentalities were provided by the USA, yet such a fact is

dismissed by USA since they consider them of inconsequential value.[20]  The statement might be

true if viewed from the perspective of the USA when considering only Olivarez's

instrumentalities, but if viewed from the point of view of the custodian, or if you take into

consideration the cost of providing such instrumentalities to all of the custodians working for the

Post Office, the value would not be considered inconsequential.  In other words, if Olivarez had

to purchase the items required to perform her job, the value is magnified that much more when

---

[17]  USA Response 9, citing Macharia v. United States, 238 F. Supp. 13, 28 (2002)

[18]  Macharia, at 28, citing 425 U.S. 807, 815-6 (1975-6).

[19]  Olivarez Depo. 9, 36, 75 and 76.

[20]  USA Response 11.

compared to her earnings. With only 20 hours every two weeks of work at barely the level of a living wage, most of her earnings would be spent on buying the instrumentalities. And at the macro level, if those expenses are multiplied by the number of custodians working for the Post Office and USA was required to pay for it all, then the value to the USA would not be inconsequential.

USA also asserts that Olivarez's occupation as a custodian was not the regular business of the United States Postal Service, however, there are may business that provide many different services or perform other duties apart from janitorial services yet they have as employees a staff to clean the place of business.[21] The hiring of a custodian for your business can objectively be considered community custom and such a custom is "of great importance" when determining a master and servant relationship.[22] Additionally:

> "[t]he custom of the community as to the control ordinarily exercised in a particular occupation is of importance. This, together with the skill which is required in the occupation, is often of almost *conclusive weight*. Unskilled labor is usually performed by those customarily regarded as servants, and a laborer is almost always a servant in spite of the fact that he may nominally contract to do a specified job for a specified price." (Emphasis added.)[23]

USA contends that Olivarez is the exception to the rule cited above because she was an

---

[21]  USA Response 9.

[22]  RESTATEMENT (SECOND) OF AGENCY § 220. cmt. "m" which states as follows: Belief as to existence of relation. It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other. *However, community custom in thinking that a kind of service, such as household service, is rendered by servants, is of importance.* (Emphasis added.)

[23]  RESTATEMENT (SECOND) OF AGENCY § 220. cmt. "i."

unskilled custodian furnished by a contractor in Indiana.[24] This would have been the case if Olivarez had remained a contract employee of the Indiana entity but she made it quite clear in her deposition that she was contracted by that entity during the first years of her time at the Post Office and it was at the insistence of the Post Office that she terminated that contractual relationship and become their employee.[25] The reason she was employed by the USA was because it is a community custom to have someone clean your place of business. The fact that the contracting of custodial workers is common place for the Postal Service, as the USA states in its response, establishes the fact that it is a custom at each one of its Post Offices.[26]

For these reasons, Olivarez once again asserts that she was an employee of the U.S. Postal Service throughout the time she worked at the Santa Rosa Post Office and argues that the USA can not support its summary judgment argument or response that she was not an employee on the day of the accident in question, November 12, 1999. The conflicting evidence presented by USA and Olivarez is material; Olivarez has established that she was an employee working in the course and scope of her employment on November 12, 1999 at the Santa Rosa Post Office; and because of this, only summary judgment in favor of Olivarez is appropriate.

Respectfully submitted,

**TEXAS RIOGRANDE LEGAL AID, INC.**
316 S. Closner
Edinburg, Texas 78539
(956)383-5673 - Tel.
(956)383-4688 Fax

---

[24] USA Response 9.

[25] Olivarez Depo. 33.

[26] See USA Response 10.

Page 8 of 12

BY:    _____
       Pablo J. Almaguer
       State Bar No. 24004523
       S.D. Tex. No. 22597

       Attorney-in-Charge for Defendant
       Elena Olivarez

## CERTIFICATE OF SERVICE

I, Pablo J. Almaguer, hereby certify that a true and correct copy of the foregoing document has been served upon opposing counsel via first class mail on this the **24th day of May, 2004,** to:

Jason R. Mann
J. EDWARD MANN, JR. & ASSOCIATES
222 E. Van Buren, Suite 701
PO Box 231
Harlingen, TX 78551-0231

Steven T. Schammel, Asst. U.S. Attorney
UNITED STATES ATTORNEY'S OFFICE
1701 W. Highway 83, Suite #600
McAllen, TX 78501

_____
Pablo J. Almaguer

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GLORIA L. GARCIA a/k/a<br>GLORIA GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-017 |
| | § | |
| UNITED STATES OF AMERICA, and | § | |
| YOLANDA PEREZ, as Postmaster, United | § | |
| States Post Office, Santa Rosa, Texas, and | § | |
| ELENA OLIVAREZ, as an employee of the | § | |
| United States Post Office, Santa Rosa, Texas, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF PABLO JAVIER ALMAGUER

I, Pablo Javier Almaguer, declare the following based on personal knowledge:

1.    My name is Pablo Javier Almaguer, and I reside in McAllen, Hidalgo County, Texas. I am over the age of eighteen years and am competent to testify to the facts contained in this declaration. I am an attorney of record for Defendant Elena Olivarez in the above-styled action.

2.    Attached as an exhibit to this declaration at Tab 1 is the Declaration of Elena Olivarez made under penalty of perjury.

3.    Attached as an exhibit to this declaration at Tab 2 are true and correct copies of select pages from the Oral Deposition of Elena Olivarez.

4.    Attached as an exhibit to this declaration at Tab 3 is a true and correct copy of a contract executed by Elena Olivarez on April 1, 1994, and by David Reidling.

5.    Attached as an exhibit to this declaration at Tab 4 is a true and correct copy of a contract executed by Elena Olivarez on March 5, 1996, and Saundra Smith on March 12, 1996.

6.    Attached as an exhibit to this declaration at Tab 5 is a true and correct copy of a

Page 10 of 12

contract executed by Elena Olivarez on April 15, 1998, and Saundra Smith on April 20, 1998.

7.    Attached as an exhibit to this declaration at Tab 6 are true and correct copies of Defendant USA's response to Plaintiff's Request for Production Number 9. The documents are labeled as Exhibits "F" and"G."

8.    Attached as an exhibit to this declaration at Tab 7 is a true and correct copy of the USA's Response in Opposition to Elena Olivarez's Motion for Summary Judgment.

9.    Each of the foregoing exhibits were produced by the parties in the course of discovery in this litigation, are part of the Court's filings or are made under penalty of perjury.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____

Pablo Javier Almaguer

Executed on: _____5-24-04_____

Page 11 of 12

## TABLE OF EXHIBITS

| Tab | Document | Abbreviated Reference |
|-----|----------|----------------------|
| 1 | Declaration of Elena Olivarez. | Olivarez Declaration. |
| 2 | Excerpts of Oral Deposition of Elena Olivarez. | Olivarez Depo. [page number] |
| 3 | Contract executed by Elena Olivarez and David Reidling. | Contract A, [page number]. |
| 4 | Contract executed by Elena Olivarez and Saundra J. Smith. | Contract B, [page number]. |
| 5 | Contract executed by Elena Olivarez and Saundra J. Smith. | Contract C, [page number]. |
| 6 | Exhibits "F" and "G" to Defendant USA's response to Plaintiff's Request for Production Number 9. | USA Prod. 9, [exhibit letter]. |
| 7 | USA's Response in Opposition to Elena Olivarez's Motion for Summary Judgment (without exhibits). | USA Response [page number]. |

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GLORIA L. GARCIA a/k/a | § | |
| GLORIA GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-017 |
| | § | |
| UNITED STATES OF AMERICA, and | § | |
| YOLANDA PEREZ, as Postmaster, United | § | |
| States Post Office, Santa Rosa, Texas, and | § | |
| ELENA OLIVAREZ, as an employee of the | § | |
| United States Post Office, Santa Rosa, Texas, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DECLARATION OF ELENA OLIVAREZ

I, Elena Olivarez, declare the following based on personal knowledge:

1.     My name is Elena Olivarez, and I reside in Santa Rosa, Cameron County, Texas. I am over the age of eighteen years and am competent to testify to the facts contained in this declaration.  I am one of the Defendants in the above-styled action.

2.     I have reviewed the contracts that were produced by the attorneys for the United States of America in response to the filings my attorney has made in this case.  I do not remember signing the contracts, but they seem to have my signature and have the following dates next to the signature: April 1, 1994; March 5, 1996; and April 15, 1998.

3.     I never received a copy of the contracts to keep for my records and I do not remember having sat down and reviewed the terms of any of the contracts.  If anything, I think the most my supervisors did at the Santa Rosa Post Office was ask me to sign but never explained to me what terms the contract contained.

4.     While I can understand the English language, it is difficult for me to read or speak in the English language.  I am more comfortable speaking the Spanish language and my conversations with the employees at the Santa Rosa Post Office were sometimes in Spanish, even when it came to discussing my duties at work.

1

1                       **A P P E A R A N C E S**

2    FOR THE PLAINTIFF:

3         Mr. Jason R. Mann
          LAW OFFICES OF J. EDWARD MANN, JR. & ASSOCIATES
4         222 East Van Buren, Suite 701
          Harlingen, Texas  78550

5
     FOR THE DEFENDANT THE UNITED STATES OF AMERICA:

6
          Ms. Nancy L. Masso
7         UNITED STATES ATTORNEY'S OFFICE
          SOUTHERN DISTRICT OF TEXAS
8         600 East Harrison, Suite 201
          Brownsville, Texas  78520

9
     FOR THE DEFENDANT ELENA OLIVAREZ:

10
          Mr. Pablo J. Almaguer
11        LAW OFFICES OF TEXAS RURAL LEGAL AID
          316 Closner
12        Edinburg, Texas  78539

13   ALSO PRESENT:

14        Ms. Cecilia Turrent, Interpreter
          Ms. Gloria Guzman, Plaintiff
15        Mr. Juan Olivarez, Defendant's husband

16

17

18

19

20

21

22

23

24

25

```
 1                    (Interpreter sworn.)
 2                    ELENA OLIVAREZ,
 3    having been first duly sworn, testified through the duly
 4    sworn interpreter as follows:
 5                         EXAMINATION
 6    BY MR. MANN:
 7        Q    Good morning.  My name is Jason Mann --
 8        A    Good morning.
 9        Q    -- and I represent Gloria Guzman in reference to
10    a November 12th, 1999 incident where she slipped and fell
11    at the post office.
12        A    Yes.
13        Q    I am going to be asking you a series of questions
14    regarding many things regarding your background, and I am
15    going to ask you questions regarding your particular
16    employment or your relationship with the United States
17    Postal Service and some questions regarding the specific
18    instances of the November 12th, 1999 fall.
19        A    Yes.  It's okay.
20        Q    If ever you don't understand a question that I
21    have asked, then ask that I rephrase it or ask it again so
22    that you can understand it.
23        A    It's okay.
24        Q    Thank you.  Please state your name for the
25    record.
```

| | | |
|---|---|---|
| 09:10 | 1 | A    My name is Elena Olivarez. |
| 09:10 | 2 | Q    And where do you live? |
| 09:10 | 3 | A    Santa Rosa. |
| 09:10 | 4 | Q    How close do you live to the post office in |
| 09:10 | 5 | Santa Rosa? |
| 09:10 | 6 | A    I don't know very well in measurements, but it |
| 09:10 | 7 | must be about a mile -- less than a mile. |
| 09:10 | 8 | Q    When did you first start working at the post |
| 09:10 | 9 | office in Santa Rosa? |
| 09:10 | 10 | A    I think it was in the '90s, but I'm not sure |
| 09:11 | 11 | exactly if it was in the '90s or a couple of years later. |
| 09:11 | 12 | I had been working there for about nine years -- |
| 09:11 | 13 | Q    Okay. |
| 09:11 | 14 | A    -- or something like that. |
| 09:11 | 15 | Q    Do you currently work there? |
| 09:11 | 16 | A    I don't work anymore now. |
| 09:11 | 17 | Q    Okay.  What is your understanding of how you were |
| 09:11 | 18 | employed by the United States Postal Service the first |
| 09:11 | 19 | year that you worked there? |
| 09:11 | 20 | A    I had a contract the first years, and then |
| 09:12 | 21 | shortly after that, the post office started to pay me. |
| 09:12 | 22 | Q    Do you remember how you were being paid November |
| 09:12 | 23 | 12th, 1999, at the post office? |
| 09:12 | 24 | A    I was still receiving checks by that contract -- |
| 09:12 | 25 | excuse me.  No, it wasn't that way.  I think I was already |

09:17   1        Q    (BY MR. MANN)   Isn't it true that the U.S.

09:17   2   Postal Service also told you specifically how to place

09:17   3   warning wet signs when you were mopping?

09:18   4        A    Yes, they would tell me, and -- and when it would

09:18   5   rain, I was also asked to put them.   I was told to put

09:18   6   them because it was very wet.

09:18   7        Q    Isn't it true that the U.S. Postal Service

09:18   8   provided you all of the mops and equipment necessary to do

09:18   9   your job?

09:18   10       A    What do you mean?   Like when I needed a new mop,

09:18   11  for example, yes, they would give me everything.

09:18   12       Q    And a bucket?

09:18   13       A    Everything.

09:18   14       Q    Everything?

09:18   15       A    They would give me everything.

09:18   16       Q    Isn't it true that the United States Postal

09:19   17  Service wanted you to do things a particular way?

09:19   18       A    Can you explain it to me again, please?

09:19   19       Q    They wanted you to -- the United States Postal

09:19   20  Service wanted you to mop a certain way?

09:19   21       A    No, they never told me so.   Since I knew how to

09:19   22  do my work, I haven't -- I worked there for many years.   I

09:19   23  knew how to deal with my work, and they would tell me that

09:19   24  they did not have any problem with me and they were very,

09:19   25  very happy with my job.

10:04   1     Q     (BY MR. MANN)   I'm not concerned about who paid

10:04   2   your taxes or if you got a refund.

10:04   3     A     Yes.   Yes, I understand.   My husband would pay

10:04   4   for the taxes.

10:04   5     Q     What I'm asking is what your working relationship

10:04   6   was with the Indianapolis company versus if you worked

10:04   7   directly at any point in time for the United States Postal

10:05   8   Service?

10:05   9     A     Every year they would give me a raise, $.25 every

10:05  10   year.   It would depend, yes.   That's the way they would

10:05  11   send me things.   Something like that, you mean?

10:05  12     Q     No.   What I'm asking is:   Were you always working

10:05  13   under this contract from Indianapolis or was there ever a

10:05  14   different situation?

10:05  15     A     It was the same thing.   The problem is that they

10:05  16   stopped sending me my check for almost one month, and

10:05  17   that's the reason why I changed to the post office.

10:06  18     Q     When did you change to the post office?

10:06  19     A     I don't remember.   I don't remember.

10:06  20     Q     Was it before Ms. Guzman fell or after?

10:06  21     A     After.

10:06  22     Q     Was it soon after or was it a long time after?

10:06  23     A     Long before -- long after that happened.

10:06  24     Q     Did you get any benefits that you didn't

10:06  25   previously receive once you switched directly with the

10:11    1    A    I don't know.  I cannot tell you.  I don't know.

10:11    2    Q    Did you deal with her on a daily basis?

10:11    3    A    What kind of contact do you mean?

10:11    4    Q    Well, you testified a while ago that she was in

10:11    5    that utility area with you when you got the mops?

10:11    6    A    She would not get with me here.  She would not go

10:11    7    in with me here where I would come and pick up my buckets

10:12    8    or anything.

10:12    9    Q    Who would you tell when you needed a new mop

10:12    10    bucket?

10:12    11    A    Ms. Perez.

10:12    12    Q    So any time you needed some supplies or had

10:12    13    questions regarding your job duties, you would ask

10:12    14    Ms. Perez?

10:12    15    A    Everything.  Everything to Ms. Perez.  She's the

10:12    16    one who would bring me anything that I would need.  She

10:12    17    would bring it to me.

10:12    18    Q    Ms. Perez never told you where to put signs or

10:12    19    where not to put signs?

10:12    20    A    When I started to work, she told me, "You put

10:12    21    this here," because I didn't know where to put it, you

10:12    22    see.  And she told me, and there I would put them.  That

10:12    23    was the safest place to put them so people that would come

10:12    24    in would not trip.

10:13    25    Q    Okay.  So Ms. Perez is probably the one that told

11:00    1       Q    The post office didn't give you a raise after the

11:00    2    contract terminated?

11:00    3       A    No.

11:00    4       Q    You also mentioned that you were the first one to

11:00    5    get there at the post office; is that correct?

11:00    6       A    Yes.

11:00    7       Q    About what time did you get there?

11:00    8       A    I don't remember if it was the year in which I

11:00    9    would start working at 6:00 or 6:30, but I would get there

11:00    10   first.

11:00    11      Q    Who told you to get there at 6:00?

11:00    12      A    I would not get in by myself.  Lydia and I and

11:01    13   another young fellow that would work there, a student.

11:01    14      Q    I appreciate the answer.  Just listen to my

11:01    15   question carefully.  At what time did you start again?

11:01    16      A    At 6:00.

11:01    17      Q    Who told you to show up at 6:00?

11:01    18      A    We would all start working at the same time at

11:01    19   that time.

11:01    20      Q    Okay.  Did you decide you wanted to show up at

11:01    21   6:00 or did somebody tell you to show up at 6:00?

11:01    22      A    No, nobody told me.  We would all start working

11:01    23   at the same time.  That's when we started at first to

11:01    24   work.  Later on we started to work at 6:30 like at this

11:01    25   time when she fell.

**CLEANING SERVICES PAYMENT AUTHORIZATION**

1. CONTRACT NUMBER:  483083-94-X-1333          2. AWARD DATE: 03/28/94

3. a. ISSUED BY:
   Purchasing Service Center
   P. O. Box 667190
   Dallas TX  75266-7190

   b. ACO CODE: 320
   c. FOR INFORMATION CALL:
     John W. Shafer
     (214) 819-7120

4. PERFORMANCE REQUIREMENTS:
   a. Address:
   U. S. POST OFFICE

   216 MAIN STREET
   SANTA ROSA TX  78593-9998

   b. COR Name:
     RAMIRO ALDAPE
   c. Telephone:  (512) 636-1333

5. ACCOUNTS PAYABLE INFORMATION (PDC USE ONLY):
   a. Contractor Number:
   c. Finance Number:  488105
   e. Contractor Name:
     ELENA OLIVAREZ
   g. Tax ID Number(TIN): 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
   i. Payment Amount (Bi-Weekly): $147.00

   b. Account Number:   52311
   d. Interior Sq. Ft.: 2,160.0
   f. So/Ec Code:  E
   h. Est. Work Hrs (Bi-Weekly):
     21 Hours

-----------------------------------------------------------------

   j. Remittance Address:
     ELENA OLIVAREZ

   P O BOX 785
   SANTA ROSA TX 78593-0785

   k. Annual Rate: $3,822.00
   l. Hourly Rate: $7.00

-----------------------------------------------------------------

   m. Contract Begin Date: 04/16/94
   o. Contract End Date: 04/12/96
   p. Days in Tour: 10
   q. Contract Number: 483083-94-X-1333
   r. City Tax Code:
   s. State Tax Code:

   n. Days in Week Work Performed:
     S S M T W T F
       X X X X X

   t. Remarks:

6.  SIGNATURE OF U.S. POSTAL SERVICE CONTRACTING OFFICER:

*David Reidling*
   Signature          DAVID REIDLING          04/07/94
              Name          Date Submitted

   This document must be issued at time of award to inform the PDC when services
will start.  The original must be mailed to: ST. LOUIS ACCOUNTING SERVICE CENTER,
CONTRACTUAL SERVICES SECTION, CONTRACT CLEANERS UNIT, 1720 MARKET STREET, ST. LOUIS
MO 63180-9184.  Copies must be placed in the contract file and mailed to the COR.

Distribution:  Original - STLPDC;  Copy - Contract File; COR

**EXHIBIT**
I

## U.S. POSTAL SERVICE OFFER AND AWARD (CLEANING SERVICES)

1. CONTRACT NUMBER: 483083-94-X-1333 2. SOLICITATION NUMBER:
3. REQUEST NUMBER: 94-02939        4. SOC/EC: E        5. COMMODITY: S206

| | |
|---|---|
| 6.   a. ISSUED BY:     ACO CODE: 320<br>Purchasing Service Center<br>P. O. Box 667190<br>Dallas TX 75266-7190 | b. FOR INFORMATION CALL:<br>Name: John W. Shafer<br>Title: Purchasing Specialist<br>Tel: (214) 819-7120<br>(No Collect Calls) |

| | |
|---|---|
| 7.   a. OFFEROR/CONTRACTOR<br>ELENA OLIVAREZ<br><br>P O BOX 785<br>SANTA ROSA TX 78593-0785 | b. Contact Name:<br>c. Telephone No: (210) 636-2262<br>d. TIN/SSN:     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<br>e. Parent TIN:<br>TIN=Taxpayer Identification Number |

f. Remittance Name and/or Address: (If different from above)

| | |
|---|---|
| 8.   DELIVERY/PERFORMANCE REQUIREMENTS:<br>    a. Address:<br>U. S. POST OFFICE<br><br>216 MAIN STREET<br>SANTA ROSA TX 78593-9998 | b. Contact:   RAMIRO ALDAPE<br>c. Telephone: (512) 636-1333<br>d. Start Date: 04/16/94<br>e. End Date:   04/12/96 |

Performance is for a term, not more than two years, beginning on the above date or within fourteen days after contract award (whichever is later). The Postal Service may extend the agreement for up to four additional two-year terms.

9.   ITEMS & PRICES/GENERAL DESCRIPTION OF REQUIREMENT:

The contractor agrees to provide cleaning services subject to the representations, certifications, specifications, and contract clauses which follow or which are incorporated by reference.

The Postal Service estimates that it will take an average of 21 hours every two weeks to complete the work satisfactorily.

10. ANNUAL AMOUNT: (Completed by USPS)

    a. Annual Amount:$3,822.00       b. Normal Biweekly Payment:$147.00

| 11. SIGNATURE: OFFEROR/CONTRACTOR | U.S. POSTAL SERVICE |
|---|---|
| *Elena Olivarez*<br>Signature           4/11/94 Date | *David Reidling*<br>Signature      Award Date |
|   ELENA OLIVAREZ<br>Typed or Printed Name and Title<br>of Person Authorized to Sign Offer | DAVID REIDLING<br>Name of Contracting Officer |

Distribution: Original - File; Copy - Contractor, COR, Installation Head, MSC or Division Maintenance Office

PART 1 - SCHEDULE
_____

SECTION A - ITEMS AND PRICES
_____

A.1   ACKNOWLEDGMENT OF AMENDMENTS (Clause OB-199) (August 1988)

   The offeror acknowledges receipt of amendments to the solicitation numbered and dated as follows:

| Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

A.2   CLEANING SERVICES PERFORMANCE (Clause OB-435)
      (December 1990)

   The contractor agrees to perform, in accordance with Attachment 2 (Frequency of Performance Chart), all required cleaning services for the initial contract period (generally two years) as identified by the start and end dates in block 8 of page 1, for the amount indicated below:

|  | #Bi-weekly Periods | #Bi-weekly Price | ##Total Amount |
|---|---|---|---|
| Cleaning Services | 52 | $147.00 | $7,644.00 |

NOTE: #  Bi-weekly = 2 weeks

      ## Bi-weekly periods  X  Bi-weekly Price = Total Amount

   This solicitation requires the contractor to have their main office no more than fifty (50) miles away from the facility to be cleaned.  If the main office address is not inserted below, the location will be assumed the same as the address entered in block 7 on page 1.

                    Main Office Location:

                    _____
                    (Street Address)

                    _____
                    (City, State and ZIP + 4)

A.3   ESTIMATED HOURS (Clause OB-570) (June 1988)

   The Postal Service estimates that it will take an average of 21 hours every two weeks to complete the work satisfactorily. This is only an estimate.

## SECTION B - SPECIFICATIONS/STATEMENT OF WORK

B.1   REQUIRED DAYS AND TIME (Clause OB-571) (November 1989)

   Services must be performed when Postal Service employees are on official duty, and in a manner and time that will not interfere with the movement of the mail. When services are required less than five days a week (i.e., Mon-Wed-Fri), and a normal service day falls on a Federal holiday, the contractor must provide the required services on the next Postal business day. No additional compensation will be provided for this service.  Services must be performed between the hours and on the days indicated below:

| Day | Hours |
|-----|-------|
| Monday | BETWEEN THE HOURS OF 8:00 AM AND 4:30 PM |
| Tuesday | BETWEEN THE HOURS OF 8:00 AM AND 4:30 PM |
| Wednesday | BETWEEN THE HOURS OF 8:00 AM AND 4:30 PM |
| Thursday | BETWEEN THE HOURS OF 8:00 AM AND 4:30 PM |
| Friday | BETWEEN THE HOURS OF 8:00 AM AND 4:30 PM |

   Do not clean on Federal Holidays.

B.2   EQUIPMENT AND SUPPLIES (Clause OB-573) (June 1988)

   The Postal Service will provide all equipment and supplies necessary in the performance of this contract.

B.3   SQUARE FOOTAGE (Clause OB-574) (December 1990)

   A detailed site description is given in Attachment 1, Facility Inventory, which includes the square footage of the facility and surrounding areas.

B.4   SCOPE OF WORK (CLEANING SERVICES) (SOW SS-001)
      (February 1991)

   The cleaning and policing of the facility must be to acceptable standards and must be performed in accordance with the following specifications, as applicable.

   a.  Workroom Toilets:

      1.  Police:

         (a)  Pick up all loose paper and trash.
         (b)  Refill tissue, towels, seat protectors, and soap dispensers.
         (c)  Check plumbing and flushing of water closets and urinals.
         (d)  Damp wipe water closets, lavatories, and multiple wash sinks.
         (e)  Sweep floor; damp mop as needed.
         (f)  Empty trash receptacles; insert new liners and take trash to pick-up point.

B.4    (Continued)

    2.  Clean:

      (a)  *Sweep floor, picking up loose paper and trash.  Remove gum spots
          with putty knife.*
      (b)  *Scrub interior and exterior surfaces (including underside of
          lips) of commodes, urinals, and sinks.*
      (c)  Spot clean toilet stalls, restroom doors, and restroom walls
          with cleaner to remove fingerprints and writing.
      (d)  Wash mirrors, ledges, chrome, and receptacles using cleaner.
      (e)  Dust stall tops, high ledges, and window sills and vents.
      (f)  Refill toilet tissue, paper towel, toilet seat protector, and
          soap dispensers.
      (g)  Empty trash receptacles; insert new liners and take trash to
          pick-up point.
      (h)  Wet mop and rinse floors using disinfectant detergent solution,
          mixed per manufacturer's recommendations.

b.  Office Toilets (clean only):  See paragraph a.2, above.

c.  Lunch/Swing Rooms:

    1.  Police:

      (a)  Remove all debris from tables and damp wipe with disinfectant
          detergent solution, mixed per manufacturer's recommendations.
      (b)  Empty trash receptacles; insert new liners and take trash to
          pick-up point.
      (c)  Damp mop spills.
      (d)  Damp wipe drinking fountain.

    2.  Clean:

      (a)  Remove all debris from tables and damp wipe with disinfectant
          detergent solution, mixed per manufacturer's recommendations.
      (b)  Empty trash receptacles; insert new liners and take trash to
          pick-up point.
      (c)  Dust horizontal surfaces from floor level, including tops of
          lockers and vending machines.
      (d)  Sweep floor.
      (e)  Clean and disinfect drinking fountains.
      (f)  In combination lunch and locker rooms, dust locker and cabinet
          tops.
      (g)  On other than wood floors, damp mop entire floor.

d.  Locker Rooms:

    1.  Police:

      (a)  Sweep open areas and aisles.
      (b)  Empty trash receptacles; insert new liners and take trash to
          pick-up point.
      (c)  Damp mop spills.
      (d)  Damp wipe drinking fountain.

    2.  Clean:

B.4   (Continued)

      (a)  Sweep floor with treated mop or treated dust cloth.
      (b)  Empty trash receptacles; insert new liners and take trash to pick-up point.
      (c)  Dust all horizontal surfaces from floor level, including tops of lockers.
      (d)  Damp wipe vertical surfaces of one-fifth of lockers.
      (e)  On other than wood floors, damp mop entire floor.

e.  Workrooms:

  1.  Police:

      (a)  Spot sweep floors to pick up all litter.
      (b)  Pick up large pieces of trash and boxes and take to pick-up point.
      (c)  Empty trash receptacles; insert new liners and take trash to pick-up point.
      (d)  Damp wipe drinking fountains.

  2.  Clean:

      (a)  Wash and disinfect drinking fountains.
      (b)  Dust window sills, radiators, horizontal surfaces of sorting cases, tables, filing cabinets, etc.
      (c)  Empty trash receptacles; insert new liners and take trash to pick-up point.
      (d)  Sweep floor with treated mop or treated dust cloth.
      (e)  Damp wipe fingerprints and smudges from walls and doors.

f.  Office Spaces (clean only):

  1.  Empty trash receptacles; insert new liners and take trash to pick-up point.
  2.  Dust horizontal surfaces of all furniture and equipment.
  3.  Dust completely all furniture in 1/5 of offices each cleaning.
  4.  Sweep floors with treated mop or treated dust cloth.
  5.  Vacuum rugs and carpets.
  6.  Wash and disinfect sinks and water coolers.
  7.  Spot clean smudges and fingerprints on glass surfaces, walls, and doors.
  8.  Spot shampoo carpets and rugs, as needed.

g.  Active Storage Areas (clean only):

  1.  Shop Areas and Supply Rooms:

      (a)  Dust horizontal surfaces.
      (b)  Sweep floors with treated mop or treated dust cloth.
      (c)  Empty trash receptacles; insert new liners and take trash to pick-up point.

  2.  Janitor Closets:

      (a)  Keep supplies and equipment in orderly manner.

Page 5 of 22

B.4    (Continued).

    (b) Damp mop floor.
    (c) Dust shelves.
    (d) Scrub interior of sink; damp wipe exterior.

  h. Inactive Storage Areas (Includes boiler and storage rooms) (clean only):

    1. Dust horizontal surfaces.
    2. Sweep floors with treated mop or treated dust cloth.

  i. Service/Box Lobby:

    1. Police:

      (a) Arrange desk or table items.
      (b) Pick up loose trash; empty trash receptacles, insert new liners, and take trash to pick-up point.
      (c) Spot sweep floor with treated mop or treated dust cloth.
      (d) Damp mop floor during wet weather.

    2. Clean:

      (a) Arrange customer desk supplies.
      (b) Dust desks, tables, screenlines, etc.
      (c) Damp wipe desktops, countertops, and bulletin board glass with cleaner.
      (d) Empty trash receptacles; insert new liners and take trash to pick-up point.
      (e) Sweep floor with treated mop or treated dust cloth.
      (f) Wash lobby door glass.
      (g) Polish metal surfaces as needed.
      (h) Spot clean smudges from walls, doors, and counter fronts.

  j. Corridor:

    1. Police:

      (a) Pick up loose trash; empty trash receptacles, insert new liners, and take trash to pick-up point.
      (b) Spot sweep with treated mop or treated dust cloth, or vacuum carpets, as needed.

    2. Clean:

      (a) Pick up loose trash; empty trash receptacles, insert new liners, and take trash to pick-up point.
      (b) Spot clean smudges from walls and doors.
      (c) Sweep floor with treated mop or treated dust cloth.

  k. Stairways (floor to floor):

    1. Police:

      (a) Pick up loose trash and take to pick-up point.
      (b) Spot sweep with treated mop or treated dust cloth, as needed.

B.4    (Continued)

      2.  Clean:

         (a)  Sweep with treated mop or treated dust cloth.
         (b)  Dust handrails.
         (c)  Spot clean smudges from walls and doors.

  l.  Freight Elevators (police only):

      1.  Sweep floor with treated mop or dust cloth.
      2.  Dust walls and doors.

  m.  Passenger Elevators (clean only):

      1.  Remove gum spots from floor.
      2.  Sweep floor with treated mop or treated dust cloth or vacuum carpet.
      3.  Damp mop floor or spot shampoo carpet, as necessary.
      4.  Damp wipe walls, trim, and doors.
      5.  Clean smudges, heel marks, and fingerprints on walls and doors.

  n.  Platforms (docks):

      1.  Police:

         (a)  Spot sweep.
         (b)  Pick up loose trash; empty trash receptacles and take to pick-up point.

      2.  Clean:

         (a)  Sweep with broom or power vacuum sweeper.
         (b)  Dust wipe vestibule doors and door glass.
         (c)  Empty trash receptacles and take trash to pick-up point.

  o.  Lookout Gallery (clean only):

      1.  Sweep floors with treated mop or treated dust cloth.
      2.  Dust walls and lookout slots.
      3.  Damp wipe lookout glass.
      4.  Dust ladder rungs, guard rails, and arm ledges.

  p.  Light Fixtures:

      1.  Dust or wash, as required.
      2.  Replace burned-out lamps, as necessary.

  q.  Venetian Blinds:  Dust or wash, as required.

  r.  Lobby and Exterior/Interior Glass:

      1.  Wash with cleaning solution and squeegee dry both sides of glass.
      2.  Wipe squeegee blade dry with cloth after each stroke.
      3.  Wipe corners and framework of window panes.
      4.  Prevent runoff of water onto framework.

  s.  Pipes/Ducts:  Dust all surfaces of pipes and ducts.

B.4    (Continued)

t.  Carrier and Other Cases:  Vacuum or dust separations with treated dust cloth.

u.  Post Office Boxes:

    1.  Dust inside the box with a treated dust cloth.
    2.  Damp wipe window glass.

v.  Lawn:

    1.  Mow – as needed during growing season.
    2.  Water – set sprinkler 45 minutes or as needed per sprinkler area.
    3.  Edge – as needed.

w.  Hedge:

    1.  Trim – as needed during growing season.
    2.  Water – set sprinkler 45 minutes or as needed per sprinkler area.

x.  Snow and Ice Removal:

    1.  Spread melting flakes or pellets evenly using a scoop or shovel.
    2.  When snow and ice melt sufficiently, remove promptly to prevent refreezing.  This is particularly important where there is pedestrian traffic, especially on steps and ramps.
    3.  Salt deposits are easily tracked onto floors. Perform damp-mopping operation to pick up as much of the tracked salt as possible. Then perform a wet-mopping operation to remove the residue.

y.  Exterior Paved Area:  Sweep sidewalks, parking areas, driveway, maneuvering area, etc.

z.  Exterior Areas (police only):  Pick up litter (e.g. papers, cans, bottles, etc.), and take to pick-up point.

B.5  MOPPING REQUIREMENTS (SOW SS-002) (February 1991)

a.  Damp Mopping:  Place safety signs and, when needed, rope in the work area to alert others to use caution on wet floors.  Using a putty knife, remove gum and other substances stuck to the floor.  Sweep the area with treated sweeping mop and/or cloth and pickup the sweepings with broom and dustpan.  Following the manufacturer's label instructions, add measured amounts of cleaning solution and water to a mop bucket.  Place the wringer on bucket and dip a clean mop into the prepared cleaning solution.  Wring the mop out until it is almost dry and walking backward, damp mop the floor using a figure-8 motion.  Turn the mop over every three or four strokes.  Return the mop to the cleaning solution frequently, wring it almost dry, and continue mopping until the entire floor has been damp mopped.  Allow the floor surface to dry completely before removing the safety equipment.

b.  Wet Mopping:  Place safety signs and, when needed, rope in the work area to alert others to use caution on wet floors.  Using a putty knife, remove gum and other substances stuck to the floor.  Sweep the area with

B.5   (Continued)

treated sweeping mop and/or cloth and pickup the sweepings with broom and dustpan. Following the manufacturer's label instructions, add measured amounts of cleaning solution and water to a mop bucket and place a wringer on bucket. Fill a second bucket half full with cold rinse water and place a wringer on it. Dip a cleaning mop in the cleaning solution and wring it out lightly so it remains wet. Moderately apply the cleaning solution to the floor with the mop in approximately 8 by 8 foot sections. Begin mopping by dragging the mop parallel to and 1 inch away from the baseboards, forming wet parallel strips on the floor. Then, walking backward, work in a figure-8 motion to the inner edges of the parallel strips so as not to splash baseboards and walls. Remove any cleaning solution from baseboards. Using a wet pick-up vacuum to remove the cleaning solution from the floor. Dip a clean rinse mop in the rinse water and wring it out lightly so it remains wet. Apply the rinse water to the floor and remove with a wet pick-up vacuum. Allow the floor surface to dry completely before removing the safety equipment.

B.6   FLOOR MAINTENANCE (SOW SS-003) (March 1992)

Floors must be maintained in accordance with Handbook MS-10, Floors, Care and Maintenance, a copy of which may be obtained from the appointed contracting officer's representative (COR). This handbook may also be reviewed at the facility to be cleaned or at the purchasing office.

SECTION C - DELIVERY/PERFORMANCE

C.1   TERM OF CONTRACT (Clause OB-515) (February 1990)

The initial term of the contract will not be more than two years, with options to renew the contract for four (4) additional two-year terms up to a total of 10 years. If the Postal Service elects to renew the contract, the contracting officer will give the contractor 60 days' written notice. New wage and fringe benefits will apply, as required by the Service Contract Act, and any unit pricing will be renegotiated.

C.2   REPORTING (CLEANING SERVICES) (Clause OB-590) (January 1992)

All contractors will be required to check in with the contracting officer's representative (COR) at the beginning of each work day and to again check out with the COR at the completion of the day's work. This process will require entries into a daily work log which will be maintained at the facility where the services are performed.

See Attachment 3.

SECTION D - PACKAGING AND MARKING

[For this document, there is no text in this section]

## SECTION E - INSPECTION AND ACCEPTANCE

E.1   CONTRACTING OFFICER'S REPRESENTATIVE
      (Clause OB-547) (June 1988)

   The contracting officer will appoint a contracting officer's representative
(COR), responsible for the day-to-day administration of the contract, to serve as
the Postal Service point of contact with the contractor on all routine matters.
A copy of the notice of appointment defining the COR's authority will be
furnished to the contractor upon award.

E.2   INSPECTION OF WORK (Clause OB-579) (June 1988)

   The contracting officer's representative (COR) will be responsible for
inspecting the cleaning service being performed to ensure that it is in
accordance with contract requirements. The COR will immediately bring to the
attention of the contractor all unsatisfactory service. If the contractor
continues to perform unsatisfactorily, the contracting officer will formally
notify the contractor in writing of the deficiencies. Continued unsatisfactory
performance may be cause for termination of the contract.

E.3   FAILURE TO PERFORM WORK (Clause OB-580) (June 1988)

   The contractor has agreed to perform the cleaning services at the Postal
Service facility designated, during the hours and for the days specified. If the
contractor fails to perform the required cleaning services during any day such
services are required at the installation, payment will be reduced by an amount
equal to either 1/260 of the annual amount, if the cleaning service is required
five days, or 1/312 of the annual amount if six days a week. If the cleaning
service is required for fewer than five days a week, the reduction will be
determined using the following formula:

   Reduction Amount = Annual Price divided by the product of (52 weeks x the
number of days per week service is to be performed.)

   Continued failure to perform may be cause for termination of the contract.

## SECTION F - PAYMENT AND FUNDING

F.1    CLAUSES INCORPORATED BY REFERENCE

The following clauses are incorporated by reference as if set forth in full text. The full text versions of these clauses are available upon request. Procurement Manual (USPS Publication 41) references are shown in parentheses.

CLAUSE
NUMBER    DATE                    TITLE

B-22   December 1989    INTEREST (PM B.2.1)

F.2    PAYMENT (CLEANING SERVICES) (Clause OB-495) (December 1990)

a.  Billing.  Payment will be made, without billing, in 26 equal installments each year (that is, every two weeks) by the ST. LOUIS ACCOUNTING SERVICE CENTER, CONTRACTUAL SERVICES SECTION, CONTRACT CLEANERS UNIT, 1720 MARKET ST., ST. LOUIS MO 63180-9184.

b.  Electronic Funds Transfer.  If the contractor desires to have payment electronically transferred to an account in a financial institution, they should submit a completed Treasury Department Form 1199-A to the contracting officer for forwarding to the St. Louis Accounting Service Center.  This form or an acceptable facsimile may be obtained from the contractor's servicing financial institution.


SECTION G - SPECIAL CLAUSES
─────────────────────────


G.1    CONTRACT TYPE (Clause B-3) (February 1991)

This is a Firm Fixed Price contract.

G.2    PERFORMANCE AT OCCUPIED POSTAL PREMISES (Clause B-27)
       (October 1987)

a.  In performing this contract, the contractor must -

1.  Comply with applicable Occupational Safety and Health Standards (29 CFR 1910) promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970;

2.  Comply with any other applicable Federal, State, or local regulations governing workplace safety to the extent they do not conflict with a.1 above; and

3.  Take all other proper precautions to protect the safety and health of the contractor's employees, Postal Service employees, and the public.

b.  The contractor must coordinate its use of the premises with the installation head or other representative designated by the contracting officer. Subjects of this coordination include the designation of work and storage areas; the extent, if any, of use by the contractor of Postal Service tools and equipment; the furnishing by the contractor of appropriate signs and barricades

G.2    (Continued)

to exclude unauthorized personnel from the work areas and to call attention to hazards and dangers; and other matters relating to the protection of Postal Service employees and property.

G.3    ORDER OF PRECEDENCE (Clause B-29) (February 1991)

Any inconsistency in the provisions of this solicitation, the contract awarded under this solicitation, or a contract awarded without the issuance of a written solicitation will be resolved by giving precedence in the following order:

a.    The Schedule.

b.    The solicitation provisions and instructions.

c.    Special clauses and general clauses.

d.    Provisions contained in attachments or incorporated by reference.

G.4    WAGE DETERMINATION (Clause OB-121) (July 1991)

This agreement is subject to the provisions of the Service Contract Act of 1965, which is incorporated by reference. Wage Determination No. 74-0777 (REV. 21) dated 08/07/92 is applicable.

G.5    CONTRACTS WITH SELF-EMPLOYED CONTRACTORS (Clause OB-576) (December 1990)

a.    Minimum Wage. Self-employed contractors must receive not less than the minimum wage prescribed by the Fair Labor Standards Act (FLSA). For self-employed contractors, the Postal Service will only accept offers that at least meet the current FLSA specified minimum wage. A self-employed offeror can determine if its offer complies by dividing the annual price by 26 and then dividing the quotient by the estimated number of hours the Postal Service believes are necessary to perform the service. The resulting amount must meet or exceed the current FLSA specified minimum wage.

b.    Status. Social Security, Federal, State and local taxes are NOT withheld by the Postal Service. The Postal Service bears no responsibility for making the self-employed contractor's required payment to these funds. The self-employed contractor is not a Postal Service employee and is not subject to Postal Service employment benefits or retirement.

G.6    CONTRACTS WITH OTHER THAN SELF-EMPLOYED CONTRACTORS (Clause OB-577) (June 1988)

Contractors who are not classified as "self-employed" are not held to a specific number of workhours. The contract provides for specific cleaning tasks that must be performed to acceptable standards regardless of the amount of time.

G.7   TERMINATION ON NOTICE (Clause OB-581) (June 1988)

   This contract may be terminated, in whole or in part, by either party upon 30 days written notice.  In the event of such termination, neither party will be liable for any costs, except for payment in accordance with the payment provisions of the contract for the actual services rendered prior to the effective date of the termination. When, in the contracting officer's judgment, the interests of the Postal Service require such action, the contract may be terminated by the contracting officer, giving the contractor one day's notice in writing.

G.8   CONTRACTOR EMPLOYEES (Clause OB-582) (February 1990)

   The contracting officer may require dismissal from work under this contract any contractor employee who is deemed incompetent, careless, insubordinate, unsuitable, or otherwise objectionable, or whose continued employment is deemed contrary to public interest or inconsistent with the best interest of the Postal Service.

G.9   ACCESS CONTROL OF CONTRACTOR PERSONNEL (Clause OB-583)
      (December 1990)

   While on Postal Service property, contractor personnel must follow the established procedures for gaining access to and departing from the premises. The contractor must fill out, and have each of its employees on the contract fill out and submit to the contracting officer any required forms for security or other reasons.  Upon request of the contracting officer, the contractor and the contractor's employees may be fingerprinted by the Postal Service.

PART 2 - CLAUSES AND ATTACHMENTS

SECTION H - GENERAL CLAUSES

H.1   CLAUSES INCORPORATED BY REFERENCE

The following clauses are incorporated by reference as if set forth in full text. The full text versions of these clauses are available upon request. Procurement Manual (USPS Publication 41) references are shown in parentheses.

| CLAUSE NUMBER | DATE | TITLE |
|---|---|---|
| B-2 | October 1987 | CHANGES (PM B.2.1) |
| B-9 | June 1988 | CLAIMS AND DISPUTES (PM B.2.1) |
| B-25 | June 1988 | ADVERTISING OF CONTRACT AWARDS (PM B.2.1) |
| B-26 | October 1987 | PROTECTION OF POSTAL SERVICE BUILDINGS EQUIPMENT, AND VEGETATION (PM B.2.1) |
| B-30 | April 1993 | PERMITS AND RESPONSIBILITIES (SERVICES) (PM B.2.1) |
| 1-4 | October 1987 | OFFICIALS NOT TO BENEFIT (PM 1.7.6) |
| 1-5 | April 1993 | GRATUITIES OR GIFTS (PM 1.7.8) |
| 1-6 | October 1987 | CONTINGENT FEES |
| 2-12 | October 1987 | POSTAL SERVICE PROPERTY--SHORT FORM (PM 2.2.7) |
| 2-20 | October 1987 | OPTION TO EXTEND THE TERM OF THE CONTRACT (PM 2.2.8) |
| 10-1 | December 1989 | PARTICIPATION OF SMALL, MINORITY-OWNED, AND WOMAN-OWNED BUSINESSES (PM 10.1.5) |
| 10-3 | October 1987 | CONVICT LABOR (PM 10.2.2) |
| 10-4 | April 1989 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (PM 10.2.3) |
| 10-9 | October 1987 | EQUAL OPPORTUNITY (PM 10.2.7) |
| 10-12 | April 1989 | SERVICE CONTRACT ACT (PM 10.2.10) |
| 10-14 | October 1987 | FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT-PRICE ADJUSTMENT (PM 10.2.10) |
| 10-15 | October 1987 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (PM 10.2.11) |
| 10-16 | October 1987 | AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (PM 10.2.12) |
| 10-20 | December 1989 | DRUG-FREE WORKPLACE (PM 10.5.4) |

H.2   FEDERAL, STATE, AND LOCAL TAXES (SHORT FORM) (Clause 7-7) (June 1988)

Except as this contract may otherwise provide, the contract price includes all applicable Federal, State, and local taxes and duties in effect on the contract date but does not include any taxes from which the Postal Service, the contractor, or this transaction is exempt. Upon request of the contractor, the Postal Service must furnish a tax exemption certificate or similar evidence of exemption from any tax not included in the contract price. "Contract date" means the date of the contractor's proposal or quotation or, if no proposal or

Page 14 of 22

H.2    (Continued)

quotation, the date of this purchase order.

H.3    ASSIGNMENT OF CLAIMS (SHORT FORM) (Clause OB-132)
         (June 1988)

If this contract provides for payments aggregating $10,000 or more, claims for
monies due or to become due thereunder may be assigned to a bank, trust company,
or other financing institution, including any Federal lending agency.  Except as
herein provided, assignment of this contract or any interest therein will be
grounds for annulment of this contract at the option of the Postal Service.

H.4    LAWS AND ORDINANCES (Clause OB-585) (June 1988)

The contractor must comply with all applicable Federal laws, ordinances, and
regulations in the course of performance under this contract.

H.5    DEFINITIONS (CLEANING SERVICES) (Clause OB-703)
         (December 1990)

As used in this contract, the following terms mean:

a.  "Contracting Officer" means the person signing this contract for the Postal
Service or any other properly designated contracting officer; the term includes
the authorized representative of the contracting officer acting within the limits
of their specified authority.

b.  "Subcontracts" includes purchase orders.

c.  "Contracting officer's representative" (COR) means a Postal Service
employee designated in writing by the contracting officer as their authorized
representative. The COR may be given the authority to inspect and accept work
performed under the contract.  However, in no event, can the COR change, modify,
terminate, or direct activities outside the scope of the contract.

## SECTION I - LIST OF ATTACHMENTS

| ATTACHMENT NO. | TITLE | NO OF PAGES |
|---|---|---|
| 1 | FACILITY INVENTORY | 1 |
| 2 | FREQUENCY OF PERFORMANCE SCHEDULE | 3 |
| 3 | CLEANING SERVICES DAILY WORK LOG | 1 |
| 4 | WAGE DETERMINATION | 4 |

K.3    LABOR INFORMATION (Provision A-13) (October 1987)

General information regarding the requirements of the Walsh-Healey Public
Contracts Act (41 U.S.C. 35-45), the Contract Work Hours and Safety Standards Act
(40 U.S.C. 327-333), and the Service Contract Act of 1965 (41 U.S.C. 351 et seq.)
may be obtained from the Department of Labor, 200 Constitution Avenue, N.W.,
Washington, DC 20210-0999, or from any regional office of that agency.

K.4    NOTICE OF INTENT TO AWARD WITHOUT DISCUSSIONS
       (Provision A-19) (October 1987)

The Postal Service intends to make award on the basis of initial proposals
received, without discussions, as permitted by the "Award Without Discussion"
provision of this solicitation.

K.5    POSTAWARD ORIENTATION CONFERENCE (Provision OA-5)
       (June 1988)

The Postal Service may require the successful offeror to attend a post-award
conference.  If required, it will be scheduled and held prior to the start of
contract performance.  The conference will be held at:

       U S POST OFFICE
       216 N MAIN
       SANTA ROSA, TX 78593


                   SECTION L - REPRESENTATIONS AND CERTIFICATIONS
                   ─────────────────────────────────────────────


L.1    TYPE OF BUSINESS ORGANIZATION (Provision A-20)
       (December 1989)

The offeror, by checking the applicable blocks, represents that it:

a. Operates as [  ] a corporation incorporated under the laws of the State of
_____, [✓] an individual, [__] a partnership, [__] a joint venture, [__] a
nonprofit organization, [__] or an educational institution; and

b. Is a [__] small business concern, [__] minority-owned business, [__]
woman-owned business, [__] labor-surplus area concern, [__] educational or other
non-profit organization, or [✓] none of the above entities.

c. SMALL BUSINESS CONCERN.  A small business concern for the purposes of
Postal Service procurement means a business, including an affiliate, that is
independently owned and operated, is not dominant in producing or performing the
supplies or services being purchased, and has no more than 500 employees, unless
a different size standard has been established by the Small Business
Administration (see 13 CFR 121, particularly for different size standards for
airline, railroad, and construction companies).  For subcontracts of $50,000 or
less, a subcontractor having no more than 500 employees qualifies as a small
business without regard to other factors.

L.1    (Continued)

d. MINORITY-OWNED BUSINESS.  A minority-owned business is a concern that is at least 51 percent owned by, and whose management and daily business operations are controlled by, one or more members of a socially and economically disadvantaged minority group, namely U.S. citizens who are Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, or Asian-Indian Americans.  (Native Americans are American Indians, Eskimos, Aleuts, and Native Hawaiians. Asian-Pacific Americans are U.S. citizens whose origins are Japanese, Chinese, Filipino, Vietnamese, Korean, Samoan, Laotian, Cambodian, Taiwanese or in the U.S. Trust Territories of the Pacific Islands.  Asian-Indian Americans are U.S. citizens whose origins are in the Indian subcontinent.)

e. WOMAN-OWNED BUSINESS.  A woman-owned business is a concern at least 51 percent of which is owned by a woman (or women) who is a U.S. citizen, controls the firm by exercising the power to make policy decisions, and operates the business by being actively involved in day-to-day management.

f. LABOR SURPLUS AREA.  A geographical area which at the time of award is either a section of concentrated unemployment or underemployment, a persistent labor surplus area, or a substantial labor surplus area, as defined in this paragraph.

    1.  Section of concentrated unemployment or underemployment means appropriate sections of States or labor areas so classified by the Secretary of Labor.

    2.  Persistent labor surplus area means an area which is classified by the Department of Labor as an area of substantial and persistent labor surplus (also called Area of Substantial and Persistent Unemployment) and is listed as such by that Department in conjunction with its publication, Area Trends in Employment and Unemployment.

    3.  Substantial labor surplus area means an area which is classified by the Department of Labor as an area of substantial labor surplus (also called Area of Substantial Unemployment) and which is listed as such by that Department in conjunction with its publication Area Trends in Employment and Unemployment.

g. LABOR SURPLUS AREA CONCERN.  A firm which will perform or cause to be performed a substantial proportion of a contract in a labor surplus area.

h. EDUCATIONAL OR OTHER NON-PROFIT ORGANIZATION.  Any corporation, foundation, trust, or other institution operated for scientific or educational purposes, not organized for profit, no part of the net earnings of which inures to the profits of any private shareholder or individual.

L.2    PARENT COMPANY AND TAXPAYER IDENTIFICATION NUMBER
    (Provision A-21) (October 1987)

a.  A parent company is one that owns or controls the basic business policies of an offeror. To own means to own more than 50 percent of the voting rights in the offeror. To control means to be able to formulate, determine, or veto basic business policy decisions of the offeror. A parent company need not own the offeror to control it; it may exercise control through the use of dominant

L.2  (Continued)

minority voting rights, proxy voting, contractual arrangements, or otherwise.

b. Enter the offeror's Taxpayer Identification Number (TIN) in the space provided. The TIN is the offeror's Social Security Number or other Employee Identification Number used on the offeror's Quarterly Federal Tax Return, U.S. Treasury Form 941.

Offeror's TIN: _____

c. [___] Check this block if the offeror is owned or controlled by a parent company.

d. If the block above is checked, provide the following information about the parent company:

Parent Company's Name: _____
Parent Company's Main Office Address: _____
No. and Street: _____
City: _____ State: _____ Zip Code: _____
Parent Company's TIN: _____

e. If the offeror is a member of an affiliated group that files its federal income tax return on a consolidated basis (whether or not the offeror is owned or controlled by a parent company, as provided above) provide the name and TIN of the common parent of the affiliated group:

Name of Common Parent: _____
Common Parent's TIN: _____

L.3  CERTIFICATE OF INDEPENDENT PRICE DETERMINATION
     (Provision 1-1) (October 1987)

a. By submitting this proposal, the offeror certifies, and in the case of a joint proposal each party to it certifies as to its own organization, that in connection with this solicitation--

1. The prices proposed have been arrived at independently, without consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to the prices with any other offeror or with any competitor;

2. Unless otherwise required by law, the prices proposed have not been and will not be knowingly disclosed by the offeror before award of a contract, directly or indirectly to any other offeror or to any competitor; and

3. No attempt has been made or will be made by the offeror to induce any other person or firm to submit or not submit a proposal for the purpose of restricting competition.

b. Each person signing this proposal certifies that--

1. He or she is the person in the offeror's organization responsible for the decision as to the prices being offered herein and that he or she has not participated, and will not participate, in any action contrary to paragraph a

Page 19 of 22

**L.3    (Continued)**

above; or

2. He or she is not the person in the offeror's organization responsible for the decision as to the prices being offered but that he or she has been authorized in writing to act as agent for the persons responsible in certifying that they have not participated, and will not participate, in any action contrary to paragraph a above, and as their agent does hereby so certify; and he or she has not participated, and will not participate, in any action contrary to paragraph a above.

c. Modification or deletion of any provision in this certificate may result in the disregarding of the proposal as unacceptable. Any modification or deletion should be accompanied by a signed statement explaining the reasons and describing in detail any disclosure or communication.

**L.4    CONTINGENT FEE REPRESENTATION (Provision 1-2) (October 1987)**

a.  The offeror must complete the following representations:

1.  The offeror [ __ ] has [ ✓ ] has not employed or retained any company or person (other than a full-time bona fide employee working solely for the offeror) to solicit or secure this contract.

2.  The offeror [ __ ] has [ ✓ ] has not paid or agreed to pay any company or person (other than a full-time bona fide employee working solely for the offeror) any fee, commission, percentage, or brokerage fee, contingent upon or resulting from the award of this contract.

b.  If either representation is in the affirmative, or upon request of the contracting officer, the offeror must furnish, in duplicate, a completed Form 7319, "Contractor's Statement of Contingent or Other Fees", and any other information requested by the contracting officer. If the offeror has previously furnished a completed Form 7319 to the office issuing this solicitation, it may accompany its proposal with a signed statement--

1.  Indicating when the completed form was previously furnished;

2.  Identifying the number of the previous solicitation or contract, if any, in connection with which the form was submitted; and

3.  Representing that the statement on the form is applicable to this proposal.

**L.5    SELF-EMPLOYED CONTRACTORS (Provision OA-501) (June 1988)**

(TO BE COMPLETED BY ALL OFFERORS)

The offeror, by checking the applicable block, represents that he/she/they

/ ✓ / Is                        / __ /  Is Not

a self-employed contractor (that is, performs 51% or more of the work except for vacations and emergencies).

L.6    REFERENCES (Provision OA-502) (January 1991)

    The offeror submits the following references who can confirm its ability and qualifications. (List name of company or organization, person to contact, title address including ZIP code, and telephone number. Any information furnished by references will be held in strict confidence by the Postal Service).

1. Company/Organization: _Texas Visiting Nurse Service_

    Person to Contact: _____ Title: _____

    Street Address: _1406 E. Harrison St._

    City: _Harlingen,_ State _TX_ ZIP Code _78550_

    Telephone Number: _(210) 412-1401_ (including area code)

2. Company/Organization: _____

    Person to Contact: _____ Title: _____

    Street Address: _____

    City: _____ State ___ ZIP Code _____

    Telephone Number: _____ (including area code)

3. Company/Organization: _____

    Person to Contact: _____ Title: _____

    Street Address: _____

    City: _____ State ___ ZIP Code _____

    Telephone Number: _____ (including area code)

L.7    PERSONS PERFORMING THE WORK (Provision OA-503) (December 1990)

    If the cleaning services will be performed by someone other than the offeror, enter the name of that individual. This may be a present employee, an individual with which the offeror has a tentative agreement, or a family member. The offeror may be required to provide references for this individual.

    Name: _____

    Address: _____

    City/state/ZIP+4: _____

    Telephone number: (___)_____

    Percentage of work to be performed by above individual: _____ %

L.7  (Continued)

Relationship (employee, tentative agreement, family):  _____

L.8  CONTRACTS BETWEEN THE POSTAL SERVICE AND ITS EMPLOYEES
     OR BUSINESS ORGANIZATIONS SUBSTANTIALLY OWNED OR CONTROLLED
     BY POSTAL SERVICE EMPLOYEES (Provision OA-701) (June 1990)

Generally, the Postal Service does not enter into contracts with its employees, their immediate families, or business organizations substantially owned or controlled by Postal Service employees or their immediate families. "Immediate family" means spouse, minor child or children, and individuals related to the employee by blood who are residents of the employee's household.

a.  Is the offeror an employee of the Postal Service or a member of the immediate family of a Postal Service employee?

(___)  Yes          (✓)  No

b.  Is the offeror's business organization (partnership, corporation, joint venture) substantially owned or controlled by a Postal Service employee or a member of his or her immediate family?

(___)  Yes          (✓)  No

SECTION M - EVALUATION AND AWARD FACTORS

M.1  CONTRACT AWARD (Provision A-8) Alternate I (February 1992)

The Postal Service intends to award a contract to the responsible offeror whose proposal conforming to the solicitation offers the best value to the Postal Service, considering price, price-related factors, and/or other evaluation factors specified elsewhere in this solicitation.

## Facility Inventory

### Facility/Location  SANTA ROSA TX 78593

#### Interior Requirements

| Area of Performance | Type | Floor Sq. Ft. | Toilet Fixtures Qty | Light Fixtures Type/Qty | Vene-tian Blinds | Glass Int. Sq. Ft. | Glass Ext. Sq. Ft. | Cases Carr-ier | Othe |
|---|---|---|---|---|---|---|---|---|---|
| Workroom Toilet | R | 130 | 5 | F  2 | | | | | |
| Workroom | R | 1,341 | | F  19 | 1 | 22 | 18 | 2 | |
| Serv./Box Lobby | R | 578 | | F  9 | | | | | |
| Platform (Dock) | CON | 151 | | F  9 | | | | | |
| Active Storage (cont.) | R | 59 | | F  1 | | | | | |
| | | | | I  1 | | | | | |
| Janitor Closet | CON | 52 | | F  1 | | | | | |
| TOTALS | | 2,311 | 5 | 42 | 1 | 22 | 18 | 2 | |

PO Boxes (QTY)   1,500 ea.

| TYPES OF FLOORS | TYPES OF LIGHT FIXTURES |
|---|---|
| CPT = Carpet<br>CON = Concrete<br>W   = Wood/Cork<br>R   = Resilient (asphalt tile, vinyl tile, linoleum, etc)<br>N   = Nonresilient (marble, terrazzo, travertine, ceramic tile, quarry tile) | F = Fluorescent<br>I = Incandescent<br><br>TOILET FIXTURES<br><br>Showers, toilets, urinals, and sinks (multiple/single) |

#### Exterior Requirements

| | | | |
|---|---|---|---|
| Area to be mowed | 9,888 Sq Ft | Linear feet of hedge trimming | _____ Ft |
| Area to be watered | 9,888 Sq Ft | Area for snow/ice removal | _____ Sq Ft |
| Area to be policed | 22,313 Sq Ft | Linear feet of edging | 520 Ft |

**Paved area to be swept  12,425 Sq Ft**

Page 1 of 1

## Frequency of Performance Schedule

## Facility/Location  SANTA ROSA TX 78593

### Part I - Tasks Performed More Than Once a Week

| Area of Performance | Task | Sat | Sun | Mon | Tue | Wed | Thu | Fri |
|---|---|---|---|---|---|---|---|---|
| Workroom Toilet | Clean | – | – | X | X | X | X | X |
|  | Wet Mop | – | – | X | X | X | X | X |
| Workroom | Clean | – | – | X | X | X | X | X |
|  | Police | – | – | – | – | – | – | – |
| Service/Box Lobby | Clean | – | – | X | X | X | X | X |
|  | Damp Mop | – | – | X | X |  | X | X |
|  | Wet Mop | – | – | – | – | X | – | – |
| Platform (Dock) | Clean | – | – | – | X | – | X | – |
|  | Police | – | – | – | – | – | – | – |
| Exterior Area | Police | – | – | X | X | X | X | X |
| Janitor Closet | Clean | – | – | X | X | X | X | X |
|  | Damp Mop | – | – | X | X | X | X | X |
| Trash Removal | Remove | – | – | X | X | X | X | X |

Day Of Performance

Page 1 of 3

**ATTACHMENT 2 (Continued)**
**Frequency of Performance Schedule**
**Facility/Location  SANTA ROSA TX 78593**
**Part II - Tasks Performed Weekly, Biweekly, Monthly, etc.**

| Area of Performance | Task | Wk | Bi | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Active Storage | Clean | _ | _ | X | X | X | X | X | X | X | X | X | X | X | X |
| Inact. Storage | Clean | _ | _ | – | – | – | – | – | – | – | – | – | – | – | – |
| Light Fixtures | Dust | _ | _ | X | – | – | X | – | – | – | – | – | X | – | – |
|  | Wash | _ | _ | – | – | – | – | – | – | X | – | – | – | – | – |
| Venetian Blinds | Dust | _ | _ | X | – | – | X | – | – | – | – | – | X | – | – |
|  | Wash | _ | _ | – | – | – | – | – | – | X | – | – | – | – | – |
| Lobby Glass | Wash | _ | X | – | – | – | – | – | – | – | – | – | – | – | – |
| Int/Ext Glass | Wash | _ | _ | – | X | – | – | X | – | – | X | – | – | X | – |
| Exter. Paved | Sweep | X | _ | – | – | – | – | – | – | – | – | – | – | – | – |
| Carrier Case | Clean | _ | _ | – | – | – | – | X | – | – | – | – | X | – | – |
| Other Case | Clean | _ | _ | – | – | – | – | – | – | X | – | – | – | – | – |
| PO Boxes | Clean | _ | _ | X | – | – | X | – | – | X | – | – | X | – | – |
| **Floors** | | | | | | | | | | | | | | | |
| Resilient | DM | _ | _ | X | X | X | X | X | – | X | X | X | X | X | X |
|  | INT | _ | _ | – | – | – | – | – | – | – | – | – | – | – | – |
|  | PER | _ | _ | – | X | X | X | X | X | X | X | X | X | X | X |
| Concrete | DM | _ | _ | – | – | – | – | – | – | – | – | – | – | – | – |
|  | INT | _ | _ | – | – | – | – | – | X | – | – | – | – | – | – |
|  | PER | _ | _ | X | – | – | X | – | – | – | – | X | – | – | X |
| **Others** | | | | | | | | | | | | | | | |
| CEILING FAN | DUST | _ | _ | – | X | – | – | X | – | – | X | – | – | X | – |

INT = Initial Preparation, PER = Periodic Maintenance, DM = Damp Mop
VAC = Vacuum, SHAMP = Shampoo, Wk = Weekly, Bi = Biweekly (once every 2 weeks)

**Page 2 of 3**

**ATTACHMENT 2 (Continued,**
**Frequency of Performance Schedule**
**Facility/Location  SANTA ROSA TX 78593**

### Part III - Tasks Performed Seasonally

| Area of Performance | Task | Wk | Bi | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lawn | Mow | _ | _ | 1 | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 1 | 1 |
| | Water | _ | _ | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| | Edge | _ | _ | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Hedge | Trim | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ |
| | Water | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ |
| Snow/Ice | REM | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ | _ |

Performance During Each Month Checked Below

REM = Removal, Wk = Weekly, Bi = Biweekly (once every 2 weeks)

**Page 3 of 3**

# CLEANING SERVICES DAILY WORK LOG

CALENDAR YEAR _____  PAY PERIOD _____

Location: _____

Effective Dates of Contract:   Contract Number: _____

Contractor Name: _____

Beginning on _____ and ending _____

| Date | Time In | Time Out | # of Hrs/ Minutes Worked | Contr- actor Initial | Description of Work Performed | COR Initial | COR Comments |
|------|---------|----------|--------------------------|----------------------|-------------------------------|-------------|--------------|
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
|      |         |          |                          |                      |                               |             |              |
| TOTAL OF HOURS WORKED THIS BIWEEKLY PERIOD | | | | | | | |

THE HOURS REPORTED MUST BE THE HOURS ACTUALLY WORKED, AND NOT AN ESTIMATE OF THE HOURS.   UNDER NO CIRCUMSTANCES SHOULD THE CONTRACTOR BE ALLOWED TO USE THE TIME CLOCK

Calendar Year is equivalent to USPS calendar year, Pay Periods 1 thru 26.

Page 1 of 4

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WAGE AND HOUR DIVISION
WASHINGTON, D.C.   20210

REGISTER OF WAGE DETERMINATIONS UNDER
THE SERVICE CONTRACT ACT
By direction of the Secretary of Labor

Alan L. Moss
Director          Division of
                  Wage Determinations

State: Texas

Area: TX COUNTIES: BROOKS, CAMERON, DUVAL
HIDALGO, JIM HOGG, KENEDY, STARR, WEBB
WILLACY, ZAPATA

Wage Determination No.: 74-0777 (Rev. 21) Date: 08/07/15

| Class of Service Employees | Minimum Hourly Wage | Health & Welfare | Vacation | Holiday | Other |
|---|---|---|---|---|---|
| | | Fringe Benefit Payments | | | |

General Services and Support Occupations,
Transportation, and Miscellaneous:

| | Class | Wage |
|---|---|---|
| 1. | Baker | $ 6.88 |
| 2. | Cook I | $ 5.79 |
| 3. | Cook II | $ 6.88 |
| 4. | Meat Cutter | $ 6.88 |
| 5. | Mess Attendant | $ 4.85 |
| 6. | Cleaner, Vehicles | $ 4.85 |
| 7. | Gardener | $ 4.85 |
| 8. | Housekeeping Aide I | $ 4.85 |
| 9. | Housekeeping Aide II | $ 5.17 |
| 10. | Janitor, Porter, Cleaner | $ 4.85 |
| 11. | Laborer, Grounds maintenance | $ 4.85 |
| 12. | Pest Controller | $ 5.79 |
| 13. | Refuse Collector | $ 4.85 |
| 14. | Window Washer/Cleaner | $ 5.17 |
| 15. | Embalmer | $ 12.96 |
| 16. | Mortician | $ 12.96 |
| 17. | Truckdriver, Refuse Collection | $ 5.79 |
| 18. | Taxi Driver | $ 5.79 |
| 19. | Tractor Operator | $ 5.79 |
| 20. | Ambulance Driver | $ 5.79 |
| 21. | Emergency Medical Technician | $ 5.79 |

SEP 1992
PROCUREMENT
...CE OFFICE
...LAS, TX

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WAGE AND HOUR DIVISION
WASHINGTON, D.C.   20210

REGISTER OF WAGE DETERMINATIONS..UNDER
THE SERVICE CONTRACT ACT
By direction of the Secretary of Labor

Alan L. Moss
Director

Division of
Wage Determinations

State: Texas

Area: TX COUNTIES: BROOKS, CAMERON, DUVAL
HIDALGO, JIM HOGG, KENEDY, STARR, WEBB
WILLACY, ZAPATA

Wage Determination No.: 74-0777  (Rev. 21)  Date: 08/07/1.

| Class of Service Employees | LOCALITY Minimum Hourly Wage | Fringe Benefit Payments | | | |
|---|---|---|---|---|---|
| | | Health & Welfare | Vacation | Holiday | Other |
| 22. Recreation Specialist | $ 10.60 | | | | |
| 23. Registered Industrial Nurse | $ 12.96 | | | | |
| 24. Swimming Pool Operator | $ 5.31 | | | | |
| 25. Vending Machine Attendant | $ 5.46 | | | | |
| 26. Vending Machine Repairer | $ 6.88 | | | | |
| 27. Vending Machine Repairer Helper | $ 5.79 | | | | |

Fringe benefits applicable to all classes of service employees
engaged in contract performance:        1/        2/        3/

1/ HEALTH & WELFARE:  $0.89 per hour or (none per week or (none 06 per month)

2/ VACATION: 2 weeks paid vacation after 1 year of service with a contractor or successor; 3 weeks after 10 years of service. Length of service includes the whole span of continuous service with the present (successor) contractor, wherever employed, and with the predecessor contractors in the performance of similar work at the same Federal facility. (Reg. 4.173)

3/ HOLIDAYS: 8 paid holidays per year: New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, and Christmas Day. (A contractor may substitute for any of the named holidays another day off with pay in accordance with a plan communicated to the employees involved.)

WAGE DETERMINATION   74-0777 (Rev. 21)        DATE 08/07/1992              Page 3 of 4

NOTE: The contracting officer shall require that any class of service employee which is not listed herein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination), be classified by the contractor so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed classes of employees shall be paid the monetary wages and furnished the fringe benefits as are determined. Such conforming procedures shall be initiated by the contractor prior to the performance of contract work by such unlisted class(es) of employees. A written report of the proposed conforming action, including information regarding the agreement or disagreement of the authorized representative of the employees involved or, where there is no authorized representative, the employees themselves, shall be submitted by the contractor to the contracting officer no later than 30 days after such unlisted class(es) of employees performs any contract work. The contracting officer shall review the proposed action and promptly submit a report of the action, together with the agency's recommendation and all pertinent information including the position of the contractor and the employees, to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, for review.  (See section 4.6 (b)(2) of Regulations 29 CFR 4)

UNIFORM ALLOWANCE: If employees are required to wear uniforms in the performance of this contract (either by the terms of the Government contract, by the employer, by the state or local law, etc.), the cost of furnishing such uniforms and maintaining (by laundering or dry cleaning) such uniforms is an expense that may not be borne by an employee where such cost reduces the hourly rate below that required by the wage determination. The Department of Labor will accept payment in accordance with the following standards as compliance:

The contractor or subcontractor is required to furnish all employees with an adequate number of uniforms without cost or to reimburse employees for the actual cost of the uniforms. In addition, where uniform cleaning and maintenance is made the responsibility of the employee, all contractors and subcontractors subject to this wage determination shall (in the absence of a bona fide collective bargaining agreement providing for a different amount, or the furnishing of contrary affirmative proof as to the actual cost), reimburse all employees for such cleaning and maintenance at a rate of $3.80 a week (or 76 cents a day), and effective April 1, 1991, the note shall be $4.25 per week (or $.85 cents per day). However, in those instances where the uniforms furnished are made of "wash and wear" materials, may be routinely washed and dried with other personal garments, and do not require any special treatment such as dry cleaning, daily washing, or commercial laundering in order to meet the cleanliness or appearance standards set by the terms of the Government contract, by the contractor, by law, or by the nature of the work, there is no requirement that employees be reimbursed for uniform maintenance costs.

WAGE DETERMINATION 74-0777 (Rev. 21)          DATE 08/07/1992          Page 4 of 4

NOTE: The duties of employees under job titles listed are those described in the Service Contract Act Directory of Occupations, Second Edition, July 1986, unless otherwise indicated. See also 29 CFR Part 4 Section 4.152.

UNITED STATES
POSTAL SERVICE

## CONTRACT/ORDER MODIFICATION

| | |
|---|---|
| 1. | MODIFICATION NO.: MO1 TO CONTRACT/ORDER NO.:    483083-94-X-1333 |

| | |
|---|---|
| 2. | a. Date Issued:    02/27/96                          b. Request No.:  96-1903 |
| | c. Finance No:    488105 |

| | |
|---|---|
| 3. Contractor: | 4. Issued By: |
| ELENA OLIVAREZ<br>P O BOX 785<br>SANTA ROSA  TX  78593-0785 | Purchasing and Materials Service Center<br>P O Box 667190<br>Dallas TX 75266-7190 |
| (210) 636-2262 | |
| TIN: 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 | FOR INFORMATION CALL:<br>Lynne Hale |
| ATTENTION: | (214) 819-7121<br>ACO CODE:  483083 |

5. The above numbered contract/order is modified as set forth in Block 6, by change order issued pursuant to authority of Clause OB-515, "Term of Contract". . The contractor is required to sign and return one copy of this modification to the Issuing Office.    (See Block 4).

6.    DESCRIPTION OF MODIFICATION:              (CLEANING SERVICES CONTRACT  RENEWAL)

Pursuant to the above referenced clause, the Postal Service elects to exercise the first two-year renewal option for the subject contract.  The contract, as extended, shall include all terms and provisions as stated in the original contract.  The period of performance for this first option shall be:  **04/13/96 TO  04/10/98**

The hourly rate is: **$ 7.33**    Bi-Weekly Hours: **21**  Bi-weekly Rate: **$ 153.93**   Annual Rate: **$ 4,002.18**

The DOL Wage Determination #94-2519 dated 01/31/95 is hereby incorporated into contract #483083-94-X-1333 effective 04/13/96.

OFFICE:  SANTA ROSA  TX 78593

Except as provided herein, all terms and conditions of the document referenced in Block 1, as heretofore changed, remain unchanged and in full force and effect.

7.    ACCOUNTS PAYABLE DATA is changed, SEE BLOCK 6.

| | | |
|---|---|---|
| Previous Grand Total | : | $  7,644.00 |
| Value of Modification | : | $  8,004.36 |
| New Grand Total | : | $ 15,648.36 |
| New Net Total (less discounts) : | | |

8.    SIGNATURES:  CONTRACTOR                    U. S. POSTAL SERVICE

*Elena Olivarez* 3/05/96          *Saundra J. Smith* 3/12/96
Signature                    Date          Signature                    Date

**ELENA OLIVAREZ**                      **SAUNDRA J. SMITH**
Name of Person Authorized    Title        Name of Contracting Officer
to Sign (Type or Print)                   Dallas P&MSC

**EXHIBIT**

GISTER OF WAGE DETERMINATIONS UNDER
THE SERVICE CONTRACT ACT
direction of the Secretary of Labor

.an L. Moss/ Division of
.rector        Wage Determinations

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WAGE AND HOUR DIVISION
WASHINGTON, D.C.   20210

Wage Determination No.: 94-2519
Revision No.: 1
Date of Last Revision: 01/31/1995

State(s): Texas

Area: TEXAS COUNTIES OF BROOKS, CAMERON, DUVAL, HIDALGO, JIM HOGG, KENEDY,
STARR, WEBB, WILLACY, ZAPATA.

** Fringe Benefits Required For All Occupations Included In
This Wage Determination Follow The Occupational Listing **

| OCCUPATION CODE AND TITLE | MINIMUM HOURLY WAGE |
|---|---|
| **ADMINISTRATIVE SUPPORT AND CLERICAL:** | |
| 01011 Accounting Clerk I | $ 6.08 |
| 01012 Accounting Clerk II | $ 6.25 |
| 01013 Accounting Clerk III | $ 7.50 |
| 01014 Accounting Clerk IV | $ 10.67 |
| 01030 Court Reporter | $ 8.33 |
| 01050 Dispatcher, Motor Vehicle | $ 8.33 |
| 01060 Document Preparation Clerk | $ 6.25 |
| 01090 Duplicating Machine Operator | $ 6.25 |
| 01110 Film/Tape Librarian | $ 7.95 |
| 01115 General Clerk I | $ 4.94 |
| 01116 General Clerk II | $ 6.00 |
| 01117 General Clerk III | $ 8.42 |
| 01118 General Clerk IV | $ 9.43 |
| 01120 Housing Referral Assistant | $ 8.33 |
| 01131 Key Entry Operator I | $ 6.00 |
| 01132 Key Entry Operator II | $ 7.77 |
| 01191 Order Clerk I | $ 6.08 |
| 01192 Order Clerk II | $ 6.25 |
| 01220 Order Filler | $ 7.50 |
| 01261 Personnel Assistant (Employment) I | $ 7.50 |
| 01262 Personnel Assistant (Employment) II | $ 7.95 |
| 01263 Personnel Assistant (Employment) III | $ 8.33 |
| 01264 Personnel Assistant (Employment) IV | $ 9.33 |
| 01270 Production Control Clerk | $ 8.33 |
| 01290 Rental Clerk | $ 7.95 |
| 01300 Scheduler, Maintenance | $ 7.95 |
| 01311 Secretary I | $ 7.95 |
| 01312 Secretary II | $ 8.33 |
| 01313 Secretary III | $ 9.33 |
| 01314 Secretary IV | $ 10.74 |
| 01315 Secretary V | $ 12.39 |
| 01320 Service Order Dispatcher | $ 7.95 |
| 01341 Stenographer I | $ 6.61 |
| 01342 Stenographer II | $ 7.17 |
| 01400 Supply Technician | $ 10.74 |
| 01420 Survey Worker(Interviewer) | $ 7.95 |

| | | |
|---|---|---|
| .460 Switchboard Operator-Receptionist | $ | 5.44 |
| .531 Travel Clerk I | $ | 6.89 |
| .532 Travel Clerk II | $ | 7.22 |
| .533 Travel Clerk III | $ | 7.48 |
| L551 Typist I | $ | 6.08 |
| L552 Typist II | $ | 6.71 |
| L611 Word Processor I | $ | 6.25 |
| L612 Word Processor II | $ | 7.95 |
| L613 Word Processor III | $ | 8.33 |

**AUTOMATIC DATA PROCESSING:**

| | | |
|---|---|---|
| 3010 Computer Data Librarian | $ | 8.01 |
| 3041 Computer Operator I | $ | 7.05 |
| 3042 Computer Operator II | $ | 8.49 |
| 3043 Computer Operator III | $ | 10.18 |
| 3044 Computer Operator IV | $ | 11.36 |
| 3045 Computer Operator V | $ | 12.61 |
| 3071 Computer Programmer I 1/ | $ | 9.43 |
| 3072 Computer Programmer II 1/ | $ | 11.68 |
| 3073 Computer Programmer III 1/ | $ | 14.07 |
| 3074 Computer Programmer IV 1/ | $ | 17.55 |
| 3101 Computer Systems Analyst I 1/ | $ | 12.45 |
| 3102 Computer Systems Analyst II 1/ | $ | 14.76 |
| 3103 Computer Systems Analyst III 1/ | $ | 16.98 |
| 3160 Peripheral Equipment Operator | $ | 8.01 |

**AUTOMOTIVE SERVICE:**

| | | |
|---|---|---|
| 05005 Automobile Body Repairer, Fiberglass | $ | 11.90 |
| 05010 Automotive Glass Installer | $ | 10.59 |
| 05040 Automotive Worker | $ | 10.59 |
| 05070 Electrician, Automotive | $ | 11.31 |
| 05100 Mobile Equipment Servicer | $ | 9.40 |
| 05130 Motor Equipment Metal Mechanic | $ | 11.90 |
| 05160 Motor Equipment Metal Worker | $ | 10.59 |
| 05190 Motor Vehicle Mechanic | $ | 11.90 |
| 05220 Motor Vehicle Mechanic Helper | $ | 8.93 |
| 05250 Motor Vehicle Upholstery Worker | $ | 10.00 |
| 05280 Motor Vehicle Wrecker | $ | 10.59 |
| 05310 Painter, Automotive | $ | 11.31 |
| 05340 Radiator Repair Specialist | $ | 10.59 |
| 05370 Tire Repairer | $ | 9.40 |
| 05400 Transmission Repair Specialist | $ | 11.90 |

**FOOD PREPARATION AND SERVICE:**

| | | |
|---|---|---|
| 07010 Baker | $ | 7.43 |
| 07041 Cook I | $ | 6.96 |
| 07042 Cook II | $ | 7.43 |
| 07070 Dishwasher | $ | 5.23 |
| 07100 Food Service Worker | $ | 5.23 |
| 07130 Meat Cutter | $ | 7.43 |
| 07250 Waiter/Waitress | $ | 5.60 |

**FURNITURE MAINTENANCE AND REPAIR:**

| | | |
|---|---|---|
| 09010 Electrostatic Spray Painter | $ | 11.31 |
| 09040 Furniture Handler | $ | 7.97 |

```
070 Furniture Refinisher                        $ 11.31
100 Furniture Refinisher Helper                  $  8.93
110 Furniture Repairer, Minor                    $ 10.00
130 Upholsterer                                  $ 11.31
```

## ERAL SERVICES AND SUPPORT:

```
.030 Cleaner, Vehicles                           $  5.23
.060 Elevator Operator                           $  5.23
.090 Gardener                                    $  6.59
.121 Housekeeping Aide I                         $  4.99
.122 Housekeeping Aide II                        $  5.23
.150 Janitor                                     $  5.23
.180 Laborer                                     $  5.94
.210 Laborer, Grounds Maintenance                $  5.60
.240 Maid or Houseman                            $  4.92
.270 Pest Controller                             $  6.96
.300 Refuse Collector                            $  5.23
.360 Window Cleaner                              $  5.60
```

## ALTH:

```
2010 Ambulance Driver                            $  7.66
2040 Emergency Medical Technician                $  9.09
2070 Licensed Practical Nurse                    $  9.09
2100 Medical Assistant                           $  8.13
2130 Medical Laboratory Technician               $  8.13
2160 Medical Record Clerk                        $  8.13
2190 Medical Record Technician                   $ 11.26
2220 Nursing Assistant                           $  7.24
2250 Pharmacy Technician                         $ 10.13
2280 Phlebotomist                                $  8.13
.2311 Registered Nurse I                         $ 11.26
.2312 Registered Nurse II                        $ 13.77
.2313 Registered Nurse II,                       $ 13.77
      Specialist
.2314 Registered Nurse III                       $ 16.66
.2315 Registered Nurse III,                      $ 16.66
      Anesthetist
.2316 Registered Nurse IV                        $ 19.97
```

## FORMATION AND ARTS:

```
13002 Audiovisual Librarian                      $ 11.36
13011 Exhibits Specialist I                      $  9.85
13012 Exhibits Specialist II                     $ 12.21
13013 Exhibits Specialist III                    $ 14.07
13041 Illustrator I                              $  9.85
13042 Illustrator II                             $ 12.21
13043 Illustrator III                            $ 14.07
13050 Library Technician                         $  8.49
13071 Photographer I                             $  8.81
13072 Photographer II                            $  9.85
13073 Photographer III                           $ 12.21
13074 Photographer IV                            $ 14.07
13075 Photographer V                             $ 17.55
```

## AUNDRY, DRY CLEANING, PRESSING:

```
15010 Assembler                                  $  5.03
15030 Counter Attendant                          $  5.18
15040 Dry Cleaner                                $  5.18
```

| | | |
|---|---|---|
| 5070 Finisher, Flatwork, Machine | $ | 5.18 |
| 5090 Presser, Hand | $ | 5.18 |
| 5100 Presser, Machine, Dry Cleaning | $ | 5.18 |
| 5130 Presser, Machine, Shirts | $ | 5.18 |
| 5160 Presser, Machine, Wearing Apparel, Laundry | $ | 5.18 |
| 5190 Sewing Machine Operator | $ | 6.62 |
| 5220 Tailor | $ | 7.30 |
| 5250 Washer, Machine | $ | 5.18 |

**:HINE TOOL OPERATION AND REPAIR:**

| | | |
|---|---|---|
| 9010 Machine-tool Operator (Toolroom) | $ | 11.31 |
| 9040 Tool and Die Maker | $ | 13.69 |

**:TERIALS HANDLING AND PACKING:**

| | | |
|---|---|---|
| 1010 Fuel Distribution System Operator | $ | 9.40 |
| 1020 Material Coordinator | $ | 10.00 |
| 1030 Material Expediter | $ | 10.00 |
| 1040 Material Handling Laborer | $ | 7.50 |
| 1071 Forklift Operator | $ | 8.93 |
| 1100 Shipping/Receiving Clerk | $ | 8.45 |
| 1130 Shipping Packer | $ | 8.45 |
| 1150 Stock Clerk | $ | 8.45 |
| 1210 Tools and Parts Attendant | $ | 8.93 |
| 1400 Warehouse Specialist | $ | 8.93 |

**:CHANICS AND MAINTENANCE AND REPAIR:**

| | | |
|---|---|---|
| 23010 Aircraft Mechanic | $ | 11.90 |
| 23040 Aircraft Mechanic Helper | $ | 8.93 |
| 23060 Aircraft Servicer | $ | 10.00 |
| 23070 Aircraft Worker | $ | 10.59 |
| 23100 Appliance Mechanic | $ | 11.31 |
| 23120 Bicycle Repairer | $ | 9.40 |
| 23125 Cable Splicer | $ | 11.90 |
| 23130 Carpenter, Maintenance | $ | 11.31 |
| 23140 Carpet Layer | $ | 10.59 |
| 23160 Electrician, Maintenance | $ | 11.90 |
| 23181 Electronics Technician, Maintenance I | $ | 10.59 |
| 23182 Electronics Technician, Maintenance II | $ | 12.17 |
| 23183 Electronics Technician, Maintenance III | $ | 14.72 |
| 23260 Fabric Worker | $ | 10.00 |
| 23290 Fire Alarm System Mechanic | $ | 11.90 |
| 23310 Fire Extinguisher Repairer | $ | 9.40 |
| 23340 Fuel Distribution System Mechanic | $ | 11.90 |
| 23370 General Maintenance Worker | $ | 11.31 |
| 23400 Heating, Refrigeration and Air Conditioning Mechanic | $ | 11.90 |
| 23430 Heavy Equipment Mechanic | $ | 11.90 |
| 23460 Instrument Mechanic | $ | 11.90 |
| 23500 Locksmith | $ | 11.31 |
| 23530 Machinery Maintenance Mechanic | $ | 11.90 |
| 23550 Machinist, Maintenance | $ | 11.90 |
| 23580 Maintenance Trades Helper | $ | 8.93 |

| | | |
|---|---|---|
| 640 | Millwright | $ 11.90 |
| 700 | Office Appliance Repairer | $ 11.31 |
| 740 | Painter, Aircraft | $ 11.31 |
| 760 | Painter, Maintenance | $ 11.31 |
| 790 | Pipefitter, Maintenance | $ 11.90 |
| 800 | Plumber, Maintenance | $ 11.31 |
| 820 | Pneudraulic Systems Mechanic | $ 11.90 |
| 850 | Rigger | $ 11.90 |
| 870 | Scale Mechanic | $ 10.59 |
| 890 | Sheet-metal Worker, Maintenance | $ 11.90 |
| 3910 | Small Engine Mechanic | $ 10.59 |
| 3930 | Telecommunications Mechanic I | $ 11.90 |
| 3940 | Telecomunications Mechanic II | $ 12.50 |
| 3950 | Telephone Lineman | $ 11.90 |
| 3960 | Welder, Combination, Maintenance | $ 11.90 |
| 3965 | Well Driller | $ 11.90 |
| 3970 | Woodcraft Worker | $ 11.90 |
| 3980 | Woodworker | $ 9.40 |

**RSONAL NEEDS:**

| | | |
|---|---|---|
| 4570 | Child Care Attendant | $ 7.95 |
| 4600 | Chore Aide | $ 4.92 |
| 4630 | Homemaker | $ 10.74 |

**ANT AND SYSTEM OPERATION:**

| | | |
|---|---|---|
| 5010 | Boiler Tender | $ 11.90 |
| 5040 | Sewage Plant Operator | $ 11.31 |
| 5070 | Stationary Engineer | $ 11.90 |
| 5190 | Ventilation Equipment Tender | $ 8.93 |
| 5210 | Water Treatment Plant Operator | $ 8.45 |

**ROTECTIVE SERVICE:**

| | | |
|---|---|---|
| 27004 | Alarm Monitor | $ 9.21 |
| 27010 | Court Security Officer | $ 9.68 |
| 27040 | Detention Officer | $ 9.68 |
| 27070 | Firefighter | $ 9.68 |
| 27101 | Guard I | $ 5.04 |
| 27102 | Guard II | $ 9.21 |
| 27130 | Police Officer | $ 9.68 |

**ECHNICAL:**

| | | |
|---|---|---|
| 29020 | Archeological Technician | $ 12.21 |
| 29030 | Cartographic Technician | $ 12.21 |
| 29040 | Civil Engineering Technician | $ 12.21 |
| 29061 | Drafter I | $ 7.84 |
| 29062 | Drafter II | $ 8.81 |
| 29063 | Drafter III | $ 9.85 |
| 29064 | Drafter IV | $ 12.21 |
| 29070 | Embalmer | $ 13.77 |
| 29081 | Engineering Technician I | $ 7.84 |
| 29082 | Engineering Technician II | $ 8.81 |
| 29083 | Engineering Technician III | $ 9.85 |
| 29084 | Engineering Technician IV | $ 12.21 |
| 29085 | Engineering Technician V | $ 14.07 |
| 29086 | Engineering Technician VI | $ 17.55 |
| 29090 | Environmental Technician | $ 12.21 |

| | |
|---|---|
| 9210 Laboratory Technician | $ 10.72 |
| 9240 Mathematical Technician | $ 12.21 |
| 9330 Mortician | $ 13.77 |
| 9390 Photooptics Technician | $ 12.21 |
| 9480 Technical Writer | $ 16.66 |
| 9620 Weather Observer, Senior 2/ | $ 11.36 |
| 9621 Weather Observer, Combined 2/<br>Upper Air and Surface Programs | $ 10.18 |
| 9622 Weather Observer, Upper Air 2/ | $ 10.18 |

ANSPORTATION/MOBILE EQUIPMENT
ERATION:

| | |
|---|---|
| 1030 Bus Driver | $ 8.07 |
| 1100 Driver Messenger | $ 7.61 |
| 1200 Heavy Equipment Operator | $ 10.02 |
| 1290 Shuttle Bus Driver | $ 7.66 |
| 1300 Taxi Driver | $ 6.84 |
| 1361 Truckdriver, Light Truck | $ 7.66 |
| 1362 Truckdriver, Medium Truck | $ 8.07 |
| 1363 Truckdriver, Heavy Truck | $ 8.95 |
| 6364 Truckdriver, Tractor-Trailer | $ 8.95 |

ISCELLANEOUS:

| | |
|---|---|
| 99005 Aircraft Quality Control<br>Inspector | $ 15.31 |
| 99020 Animal Caretaker | $ 5.99 |
| 99030 Cashier | $ 6.00 |
| 99040 Child Care Center Clerk | $ 9.33 |
| 99050 Desk Clerk | $ 6.25 |
| 99260 Instructor | $ 13.77 |
| 99300 Lifeguard | $ 7.24 |
| 99350 Park Attendant (Aide) | $ 8.33 |
| 99400 Photofinishing Worker | $ 6.25 |
| 99500 Recreation Specialist | $ 10.74 |
| 99510 Recycling Worker | $ 6.54 |
| 99610 Sales Clerk | $ 6.25 |
| 99630 Sports Official | $ 7.24 |
| 99658 Survey Party Chief | $ 10.96 |
| 99659 Surveying Technician | $ 8.95 |
| 99660 Surveying Aide | $ 7.27 |
| 99690 Swimming Pool Operator | $ 7.43 |
| 99720 Vending Machine Attendant | $ 6.54 |
| 99730 Vending Machine Repairer | $ 7.43 |
| 99740 Vending Machine Repairer<br>Helper | $ 6.54 |

---

**\*\* Fringe Benefits Required For All Occupations Included In
This Wage Determination \*\***


HEALTH & WELFARE: $0.90 per hour or $36.00 per week or $156.00 per
month.


VACATION: 2 weeks paid vacation after 1 year of service with a
contractor or successor; 3 weeks after 10 years of service. Length of
service includes the whole span of continuous service with the present

contractor or successor, wherever employed, and with the predecessor contractors in the performance of similar work at the same Federal facility. (Reg. 4.173)

HOLIDAYS: A minimum of eight paid holidays per year: New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, and Christmas Day. (A contractor may substitute for any of the named holidays another day off with pay in accordance with a plan communicated to the employees involved.) (See 29 CFR 4.174)

1/ Does not apply to employees employed in a bona fide executive, administrative, or professional capacity as defined and delineated in 29 CFR 541. (See 29 CFR 4.156)

2/ APPLICABLE TO WEATHER OBSERVERS ONLY - NIGHT PAY & SUNDAY PAY: If you work at night as a part of a regular tour of duty, you will earn a NIGHT DIFFERENTIAL and receive an additional 10% of basic pay for any hours worked between 6pm and 6am. If you are a full-time employee (40 hours a week) and Sunday is part of your regularly scheduled workweek, you are paid at your rate of basic pay plus a Sunday premium of 25% of your basic rate for each hour of Sunday work which is not overtime (i.e. occasional work on Sunday outside the normal tour of duty is considered overtime work).

## ** UNIFORM ALLOWANCE **

If employees are required to wear uniforms in the performance of this contract (either by the terms of the Government contract, by the employer, by the state or local law, etc.), the cost of furnishing such uniforms and maintaining (by laundering or dry cleaning) such uniforms is an expense that may not be borne by an employee where such cost reduces the hourly rate below that required by the wage determination. The Department of Labor will accept payment in accordance with the following standards as compliance:

The contractor or subcontractor is required to furnish all employees with an adequate number of uniforms without cost or to reimburse employees for the actual cost of the uniforms. In addition, where uniform cleaning and maintenance is made the responsibility of the employee, all contractors and subcontractors subject to this wage determination shall (in the absence of a bona fide collective bargaining agreement providing for a different amount, or the furnishing of contrary affirmative proof as to the actual cost), reimburse all employees for such cleaning and maintenance at a rate of $4.25 per week (or $.85 cents per day). However, in those instances where the uniforms furnished are made of "wash and wear" materials, may be routinely washed and dried with other personal garments, and do not require any special treatment such as dry cleaning, daily washing, or commercial laundering in order to meet the cleanliness or appearance standards set by the terms of the Government contract, by the contractor, by law, or by the nature of the work, there is no requirement that employees be reimbursed for uniform maintenance costs.

## ** NOTES APPLYING TO THIS WAGE DETERMINATION **

Source of Occupational Titles and Descriptions:

The duties of employees under job titles listed are those described in the "Service Contract Act Directory of Occupations," Fourth Edition, January 1993, as amended by First Supplement December 1993, unless otherwise indicated. This publication may be obtained from the Superintendent of Documents, at 202-783-3238, or by writing to the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402. Copies of specific job descriptions may also be obtained from the appropriate contracting officer.

REQUEST FOR AUTHORIZATION OF ADDITIONAL CLASSIFICATION AND WAGE RATE (Standard Form 1444 (SF 1444))

Conformance Process:

The contracting officer shall require that any class of service employee which is not listed herein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination), be classified by the contractor so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed classes of employees shall be paid the monetary wages and furnished the fringe benefits as are determined. Such conforming process shall be initiated by the contractor prior to the performance of contract work by such unlisted class(es) of employees. The conformed classification, wage rate, and/or fringe benefits shall be retroactive to the commencement date of the contract. (See Section 4.6 (C)(vi)) When multiple wage determinations are included in a contract, a separate SF 1444 should be prepared for each wage determination to which a class(es) is to be conformed.

The process for preparing a conformance request is as follows:

1) When preparing the bid, the contractor identifies the need for a conformed occupation(s) and computes a proposed rate(s).

2) After contract award, the contractor prepares a written report listing in order proposed classification title(s), a Federal grade equivalency (FGE) for each proposed classification(s), job description(s), and rationale for proposed wage rate(s), including information regarding the agreement or disagreement of the authorized representative of the employees involved, or where there is no authorized representative, the employees themselves. This report should be submitted to the contracting officer no later than 30 days after such unlisted class(es) of employees performs any contract work.

3) The contracting officer reviews the proposed action and promptly submits a report of the action, together with the agency's recommendations and pertinent information including the position of the contractor and the employees, to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, for review. (See section 4.6(b)(2) of Regulations 29 CFR Part 4).

4) Within 30 days of receipt, the Wage and Hour Division approves, modifies, or disapproves the action via transmittal to the agency contracting officer, or notifies the contracting officer that additional time will be required to process the request.

5) The contracting officer transmits the Wage and Hour decision to the contractor.

6) The contractor informs the affected employees.

Information required by the Regulations must be submitted on SF 1444 or bond paper.

When preparing a conformance request, the "Service Contract Act Directory of Occupations" (the Directory) should be used to compare job definitions to insure that duties requested are not performed by a classification already listed in the wage determination. Remember, it is not the job title, but the required tasks that determine whether a class is included in an established wage determination. Conformances may not be used to artificially split, combine, or subdivide classifications listed in the wage determination.

**UNITED STATES POSTAL SERVICE**

## CONTRACT/ORDER MODIFICATION

1.   **MODIFICATION  NO.:  MO2  TO  CONTRACT/ORDER NO.:   483083-94-X-1333**

2.   a.  Date Issued:     04/13/98                                      b.  Request No.:   98-2269
     c.  Finance No:     **488105**

---

3.   Contractor:                                                        4. Issued By:

     ELENA OLIVAREZ                                                     Purchasing and Materials Service Center
     P O BOX  785                                                       P O Box 667190
     SANTA ROSA TX 78593-0785                                           Dallas TX 75266-7190

     (210) 636-2262
     **TIN: 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**                                              FOR INFORMATION CALL:
                                                                        Lynne Hale
     ATTENTION:                                                         (214) 819-7121
                                                                        ACO CODE·   483083

---

5.   The above numbered contract/order is modified as set forth in Block 6, by change order issued pursuant
     to authority of Clause OB-515, "Term of Contract". .  The contractor is required to sign and return one copy
     of this modification to the Issuing Office.  (See Block 4).

---

6.   **DESCRIPTION OF MODIFICATION:**                  **(CLEANING SERVICES CONTRACT  RENEWAL)**

     Pursuant to the above referenced clause, the Postal Service elects to exercise the second two-year renewal
     option for the subject contract.  The contract, as extended, shall include all terms and provisions as stated
     in the original contract.  The period of performance for this second option shall be:  **04/11/98 TO  04/08/00**

     The hourly rate is:  **$ 7.75**    Bi-Weekly Hours:  **21**   Bi-weekly Rate: **$ 162.50**   Annual Rate: **$ 4,231.50**

     OFFICE:  SANTA ROSA  TX  785933


     Except as provided herein, all terms and conditions of the document referenced in Block 1, as heretofore
     changed, remain unchanged and in full force and effect.

---

7.   ACCOUNTS PAYABLE DATA is changed, SEE BLOCK 6.

       Previous Grand Total            :         $ 15,648.36
       Value of Modification           :         $  8,463.00
       New Grand Total                 :         $ 24,111.36
       New Net Total (less discounts) :

---

8.   SIGNATURES:  CONTRACTOR                      U. S. POSTAL SERVICE

     *Elena Olivarez*  4/15/98              *Saundra L Smith*      4-20-98
     Signature                   Date              Signature                      Date

     **ELENA OLIVAREZ** _____            **SAUNDRA J. SMITH** _____
     Name of Person Authorized    Title            Name of Contracting Officer
     to Sign (Type or Print)                       **Dallas P&MSC**

**EXHIBIT**

### UNITED STATES POST OFF. ≥
### SANTA ROSA  TX  78593


TO:   Purchasing and Materials Service Center
      United States Postal Service
      P O Box 667190
      Dallas TX 75266-7190


RE:   Certification for Cleaning Services - Days Missed During Pay Period

Facility Finance Number:      **488105**_____
Contractor Name:             Elena Olivarez_____
SSN/Tax I.D. Number:          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_____
Contract Number:             483083-94-X-1333____
Biweekly Rate of Pay:        $162.75_____
No. of Days Svcs Scheduled:     10_____

--------------------------------------------------------------------------------------------------------------

Pay Period: _____     Fiscal Year: _____


I certify that:

    (   )   No service was performed during the pay period:

    (   )   No service was performed on _____ scheduled days(s)
                               (number of )

            because:   _____
                         _____
                         _____

    (   )   PS Form 1264 is no longer available from the St. Louis ASC,
        Contractual Services Branch, Contract Cleaning Section, P. O. Box 80105,
        St. Louis MO 63180-0105.  A copy of this letter has been submitted in lieu
        thereof.

    (   )   Contractor resigned effective _____.
                                (Date)


_____     _____
Signature                        Date

CALENDAR YEAR _____   PAY PERIOD _____

Location: Santa Rosa TX 78593   Contract No. 483083-94-X-1333   Contractor Name: Elena Olivarez

Effective Dates of Contract, Initial Term: 04/16/94 to 04/12/96   Option 1: 04/13/96 to 04/10/98   Option 2: 4/11/98 to 4/08/2000
Option 3: _____ to _____   Option 4: _____ to _____

| Date | Time In | Time Out | # of Hrs/ Minutes Worked | Contr-actor Initial | Description of Work Performed | COR Initial | COR Comments |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

TOTAL OF HOURS WORKED THIS BIWEEKLY PERIOD

THE HOURS REPORTED MUST BE THE HOURS ACTUALLY WORKED, AND NOT AN ESTIMATE OF THE HOURS. UNDER NO CIRCUMSTANCES SHOULD THE CONTRACTOR BE ALLOWED TO USE THE TIME CLOCK.

Calendar Year is equivalent to USPS calendar year, Pay Period 1 thru 26.

# EXHIBIT "F"

# Production Request No. 7

## B-02-017

FROM
PAUL CAMACHO  PH 9635562
1306 E. CLIFTON
WESLACO TX 78596

# PROPOSAL

Page No. _____
of _____ Pa

| PROPOSAL SUBMITTED TO: | PHONE | DATE 7/1/96 |
|---|---|---|
| NAME SANTA ROSA Post office | JOB NAME | |
| STREET | STREET | |
| CITY | CITY | STATE |
| STATE TX. | | |

We hereby submit specifications and estimate for   STRIPPING FLOOR &
SEALING IT 1 COAT AND APPLY 3 COATS OF WAX

We hereby propose to furnish labor and materials - complete in accordance with the above specifications, for the sum of
THREE HUNDRED TWENTY FIVE dollars ($ 325 00/100 ) with payment to be made as follows

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accident or delays beyond our control. This proposal subject to acceptance within _____ days and is void thereafter at the option of the undersigned.

Authorized Signature _____

## ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

ACCEPTED·

Signature_____

# EXHIBIT "G"

# Production Request No. 7

# B-02-017

| U.S. Postal Service | | 1. Requisition Number | 2. Requisition Date | 3. Required Delivery Date |
|---|---|---|---|---|
| **REQUISITION FOR SUPPLIES, SERVICES, OR EQUIPMENT** See Instructions on Reverse | | 3 | 7/11/96 | ASAP |

| 4. Job Order Number (Maintenance Use Only) | | | | |
|---|---|---|---|---|
| WC | Acronym | Equipment No. | EC | Work Order No |
| | | | | |

| 5. To | 6. From: (Facility Name, Address and ZIP+4) |
|---|---|
| U. S. POSTAL SERVICE ATTN: RAY GARCIA - POO SAN ANTONIO, TX. 78284-9992 | SANTA ROSA 216 N. MAIN ST SANTA ROSA, TX. 78593 |

| 7. Complete Delivery Address | 8. For Information Call | |
|---|---|---|
| 216 N. MAIN ST. SANTA ROSA, TX. 78593-9998 | a. Name RAMIRO ALDAPE | b. PEN Telephone Number (210) 636-13 |

| 9. Budget Finance No. | 10. Prop. Acct. Fin. No. | 11. Acct. No | 12. FEDSTRIP Address Code | 13. CAG | 14. PCN | 15. Requestor | 16 |
|---|---|---|---|---|---|---|---|
| 48-8105 | | | 187D10 | J | | ☐ VMF ☑ Other | |

| 17. Description | | | | | |
|---|---|---|---|---|---|
| PSN, NSN, PSIN or Part Number (a) | Supplies, Services, or Equipment Requested (b) | Quantity (c) | Unit (d) | Unit Price (e) | E |
| | STRIP FLOOR - 1 COAT OF SEALER - 3 COATS OF WAX. | | | | 3. |

**18. Justification**
FLOOR HAS NOT BEEN WAX ~~SINE~~ SINCE 1992.
FLOOR LOOK BAD.

**19. Suggested Source of Supply** *SEE PROPOSAL ATTACHED*
PAUL CAMACHO - FLOOR CLEANING - WESLACO, TX. 78596

| 20. Requesting and Approval Signatures | | | |
|---|---|---|---|
| a. Requested By *(signature)* Ramiro Aldape PM | b. Approved By *(signature)* RG Garcia 7/14/96 Mgr Post Office Ops(A) | c. Certifying Funds Available Amount    Signature | |
| d. Sectional Center Approval | e. Division Approval | f. Other Approval | |

| Procurement Use Only | 21 Source of Supply | 22. Contract/Order Number |
|---|---|---|
| | 23 Notes | 24 Order Date |
| | 25 Processed By (Title and Signature) | |

53

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GLORIA GARCIA. A/K/A          §
GLORIA GUZMAN                 §
    Plaintiff,             §
                              §
vs.                           §
                              §     CIVIL ACTION NO. B-02-017
                              §
UNITED STATES OF AMERICA, and §
YOLANDA PEREZ, as Postmaster, §
United States Post Office, Santa Rosa, §
Texas, and ELENA OLIVAREZ, as an §
Employee of the United States Post Office, §
Santa Rosa, Texas             §
    Defendants.            §

THE UNITED STATES'
RESPONSE IN OPPOSITION TO DEFENDANT ELENA OLIVAREZ'S
MOTION FOR SUMMARY JUDGMENT

    NOW COMES Defendant United States of America by and through Michael Shelby, United

States Attorney for the Southern District of Texas, and respectfully moves this Court, to deny

Defendant Elena Olivarez's Motion for Summary Judgment pursuant to Fed. R. Civ. P 56, stating

the following in support.

## I. Defendant Elena Olivarez's Claims and Allegations

    This action is brought by Plaintiff Gloria Garcia a/k/a Gloria Guzman (Plaintiff) under the

Federal Tort Claims Act (FTCA) for alleged injuries that Plaintiff claimed to have received in the

United States Post Office in Santa Rosa (Santa Rosa Post Office), Texas on November 12, 1999.

The Court granted an unopposed motion to substitute the United States of America for Postmaster

Yolanda Perez on May 16, 2003. The only remaining defendants are the United States and Elena

Olivarez.

Defendant Olivarez contends that she is the employee of the United States Postal Service and not an independent contractor, and therefore not a proper defendant under the FTCA. As such she argues that her Motion for Summary Judgment should be granted. Specifically, Defendant Olivarez alleges that:

1.    USA exercised exhaustive control over Olivarez's employment by providing detailed and extensive instructions concerning her duties as a custodian at the U.S. Postal Office in Santa Rosa, Texas and such control belies the USA's claim that she was an independent contractor;

2.    Along with USA's control over Olivarez's detailed physical performance, the law of agency establishes that Olivarez was an employee of the USA and not an independent contractor; and

3.    Olivarez was acting within the course and scope of her employment when the common law tort allegations alleged by Plaintiff were committed.

*(Defendant Elena Olivarez's Motion for Summary Judgment, p. 2-3).*

## II. Statement of the Issues

1.    The United States did not exercise exhaustive control over Defendant Olivarez's employment at the Santa Rosa Post Office.

2.    The law of agency does establishes that Defendant Olivarez was (at the time of the alleged fall) an independent contractor and not an employee of the United States Postal Service.

3.     Since Defendant Olivarez was an independent contractor at the time of

Plaintiff's alleged fall, she was not acting within the course and scope of an

employee.


## III. Statement of Facts

The Plaintiff contends that on November 12, 1999, at 7:10 AM, she entered the Santa Rosa

Post Office to collect her mail and while in the process of doing so, Plaintiff allegedly slipped and

fell (*Plaintiff's Original Complaint*).  At the same time Elena Olivarez, an independent contractor

custodian, was in the Santa Rosa Post Office  cleaning (*Olivarez Deposition,* p. 12:25-13:22).[1]

Defendant Olivarez contends, however, that she was an employee of the United States Postal Service

at the time of the alleged fall.

On the date in question, Plaintiff contends that the floor near her post office box near where

Defendant Olivarez had been mopping was wet (*Plaintiff's Original Complaint,* p.7).  Defendant

Olivarez first noticed Plaintiff on the ground when she bumped into Plaintiff (*Olivarez Deposition.*

p. 21:1-5; p. 55:23-25).  Plaintiff filed this action on February 1, 2002 (*Plaintiff's Original*

*Complaint*).


## IV. Standard of Review Fed. R. Civ. P. 56

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be

awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1]The deposition of Elena Olivarez is attached hereto and incorporated into the Motion for
Summary Judgment as *Exhibit A.*

with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.; *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (*per curiam*). The moving party bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant who is a defendant may discharge its burden by pointing out an absence of proof on any one of the essential elements of the plaintiff's claim. *Celotex*, 477 U.S. at 325. The moving party, however, need not negate the elements of the nonmovant's case. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322-23. Moreover, disputes over irrelevant facts will not preclude summary judgment. Only material facts - those capable of affecting the outcome under existing law - infringe upon the summary judgment analysis. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also, Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990) (fact issue must be "outcome determinative"). The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075. However, all evidence must be viewed in a light most favorable to the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 106 S Ct. 2505, 2513-14 (1986).

## V. Argument

Pursuant to 28 U.S.C. 2679 (d)(1) the United States of America was substituted as the defendant in place of Postmaster Yolanda Perez, since she was acting within the course and scope of her employment at the time of Plaintiff's alleged injury. *See Docket No. 5 and 7.* Since Defendant Olivarez was an independent contractor, the United States did not substitute for her. Pursuant to 28 U.S.C. 2679 (d)(3), should scope of office or employment be refused, the individual may, at any time before trial, "petition the court to find and certify that the employee was acting within the scope of his office or employment."

The critical factor in determining if an individual is an independent contractor or an employee, is the power of the United States to control the detailed physical performance of the individual. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. (1975-76); *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998); *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993) "Although 'control of the detailed physical performance may be the most critical factor in identifying an employee it is not necessarily the only factor.'" *Linkous*, 142 F.3d 275; *Broussard*, 989 F.2d 174. In order to determine if an individual was an independent contractor as opposed to an employee other factors to consider are:

(1)    the extent of control which, by the agreement, the master may exercise control over the details of the work;
(2)    whether or not the one employed is engaged in a distinct occupation or business;
(3)    the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(4)    the skill required in the particular occupation;
(5)    whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;
(6)    the length of time for which a person is employed;

(7)   the method of time, whether by time or by the job;

(8)   whether or not the work is a part of the regular business of the employer;

(9)   whether or not the parties believe they are creating the relationship of master and servant; and

(10)  whether or not the principle is or is not in business.

*Linkous*, 142 F.3d at 276; *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997); *Restatement (Second) of Agency* § 220.[2]  An examination of the evidence shows that almost every factor proves that Defendant Olivarez was an independent contractor.

## 1.   The United States did not exercise exhaustive control over Defendant Olivarez's employment at the Santa Rosa Post Office.

Defendant Olivarez was an independent contractor because she exercised ultimate control over her actions.  Defendant Olivarez signed a written contract with the United States Postal Service on April 1, 1994 (*Olivarez Deposition*, p. 6: 20).[3]   In completing the written contract with the United States Postal Service, Defendant Olivarez checked off the box stating that she, "is" a self-employed contractor.[4]  Two pages later Defendant Olivarez admitted, by checking off the boxes, that she was not an employee of the United States Postal Service nor was her employment organization owned or substantially controlled by a Postal Service employee or by a member of their family.[5]

---

[2]Attached hereto as *Exhibit B*.

[3] *Exhibit C1*, p. 2.

[4] *Exhibit C1*, p. 20.

[5] *Exhibit C1*, p. 23.

This contract contained all the terms of her employment. The length of time for her to complete the required job is estimated by the contract as 21 hours every two weeks.[6]

When questioned during her deposition as to who she received her instructions from, Defendant Olivarez admitted, "Through the agreement when I had the contract. The agreement," (*Olivarez Deposition*, p. 8:14-15). When further questioned by Plaintiff, if the people at the Santa Rosa Post Office asked her, Defendant Olivarez, to do things (i.e. mop) in a specific way, Defendant Olivarez admitted, "They never told me to do so," (*Id.*, p. 9:16-21). The documentation on how to conduct her job was provided to Defendant Olivarez by the contract (*Id.*, p. 10: 15-22; p. 12:25-13:3). The Contract that Defendant Olivarez signed contains 31 pages of requirements and specifications for successful completion of the contract.[7] The contract states that the supplies are to be provided by the United States Postal Service and delineates the scope of the work that she is being contracted to provide.[8] Defendant Olivarez's term of her employment was set at two (2) years.[9] The contract further requires the contractor to comply with applicable OSHA regulations; federal, state, and local regulations for workplace safety, and compliance with the United States Postal Service Handbook MS-10 (Floors, Care and Maintenance).[10]

Defendant Olivarez arrived at work at 6:00 am (*Id.* p. 59:22). When asked who directed her

---

[6] *Exhibit C1*, p. 2.

[7] *Exhibit C1*, p. 2.

[8] *Exhibit C1*, p. 4-9.

[9] *Exhibit C1*, p. 10. This contract could be extended for no more than four (4) additional two year terms. *Id.*, p. 2; *See also Exhibit C2 and C3*.

[10] *Exhibit C1*, p. 10, 12.

to do so she admitted, "No, nobody told me," (*Id.* p. 59:22). In fact, by the terms of her contract, it is the contract that so instructed her as to her hours, specifically between 8:00 am and 4:30 pm so long as it does not interfere with the movement of the mail.[11] She did not have to work a required number of hours, rather she worked until the job was done. In the contract, the United States estimated the amount of time to be approximately 21 hours every two weeks.[12] In the execution of the day to day duties, Defendant Olivarez admitted that she did not necessarily follow the maintenance manual, and she was not specifically instructed on how to proceed (*Id.*, p. 17:7-8). In fact, Defendant Olivarez was provided with a key to the front door and the postal employee area so as to permit her to clean all areas as she deemed fit (*Id.*, 30:1:5). The only guidance that she received form the United States Postal Service was the contract, its attachments, and the contacting officer's representative (the Postal Service point of contact with the contractor on all routine matters).[13] In the placement of safety equipment, Defendant Olivarez had the manuals provided pursuant to the contract.[14] When Defendant Olivarez was asked if she would return to work if called by the Post Office, she admitted, "Yes, if I wanted to go, I could go," (*Id.*, p. 63:17). She clearly understood that she had the option and could say no since it would be outside of her normal hours. Defendant Olivarez exercised ultimate control over her actions and when she appeared for work.

The only exercise of control by the United States Post Office was to guarantee performance

---

[11] *Exhibit C1*, p. 4.

[12] *Exhibit C1*, p. 3.

[13] *Exhibit C1*, p. 11.

[14] *Exhibit C1*, p. 10. Defendant Olivarez stated that she received the Post Office Manuals from her contractor in Indiana and that she was instructed by the person whose place she took (*Olivarez Deposition*, p. 38:15-17).

of the contract pursuant to Section E.[15]  However, broad supervisory control, even on a daily basis, does not suffice to demonstrate control over the physical performance of the contractor. *Macharia v. U.S.*, D.D.C.2002, 238 F.Supp.2d 13, *affirmed* 334 F.3d 61, 357 U.S.App.D.C. 223. By the admission of Defendant Olivarez, the majority of the control was provided through the contract itself and through her own decision making.  When examined in a light most favorable to the United States, the opponent of the motion for summary judgment, the Court must find that the United States did not exercise exhaustive control over Defendant Olivarez, therefore the United States Postal Service was not her employer. *Anderson*, 477 U.S. at 255 106 S.Ct. at 2513-14.

**2.    Defendant Olivarez was (at the time of the alleged fall) an independent contractor and not an employee of the United States Postal Service.**

In addition to the fact that the contract, not the United States Postal Service as an employer, controlled most of the details of the work, the Defendant Olivarez did not meet most of the other factors relevant in determining if she was an employee of the United States.

Defendant Olivarez was engaged in a distinct occupation or business, that of custodian (*Olivarez Deposition*, p. 8:5-10).[16]  This occupation is not part of the regular business of the United States Postal Service which is the delivery of mail.  The method of time by which Defendant Olivarez was paid was set by the  contract.[17]  She was paid on a bi-weekly basis.[18]  This was a flat

---

[15] *Exhibit C1*, p. 11.

[16] *Exhibit C1*, p. 1; Exhibit *C1*, p. 2.

[17] *Exhibit C1*, p. 2; *Exhibit C2*, p. 1; and *Exhibit C3*, p. 1.

[18] *Exhibit C1*, p. 3.

rate regardless of the number of hours worked. The contract stated that it was anticipated that Defendant Olivarez would spend approximately 21 hours every two weeks to accomplish her contractual obligations.[19] Defendant Olivarez was under contract for an initial period of two years with the option of being extended for up to four (4) additional two (2) year periods.[20] Ultimately, Defendant Olivarez's contract was extended twice, for two years each time.[21]

Another factor is whether, in the locality, the custodial work is usually done under the direction of the employer or by a specialist without supervision. *Restatement (Second) of Agency* § 220 (2)(c). There is, however, an exception to the general rule. *Id.*, Comment i. "If, however, one furnishes unskilled workmen to do work for another, it is not abnormal to find that the workmen remain the servants of the one supplying them. *See* § 227." *Id.* In this particular instance Defendant Olivarez stated that she thought she was employed by a contractor in Indiana, and that they in turn furnished her as an unskilled custodial worker to the United States Postal Service (Olivarez Deposition, p 13:11-16).[22] The reality is that the United States Postal Service contracts for cleaning services throughout Texas and the Postal Service's entire Southwest Area - the contracting of

---

[19] *Exhibit C1*, p. 3.

[20] *Exhibit C1*, p. 2.

[21] *Exhibit C2*, p. 1; and *Exhibit C3*, p. 1. Defendant Olivarez contends that she was later hired by the United States Postal Service long after Plaintiff's fall (*Olivarez Deposition*, p. 33:18-23). However, Defendant Olivarez's last contract extended beyond the date of the fall. *Exhibit C3*, p. 1.

[22] Yet another factor to consider is the skill level required. *Restatement (Second) of Agency* § 220 (2)(d). Defendant Olivarez admits in her Memorandum and Authorities in Support of Defendant Elena Olivarez's Motion for Summary Judgment that her duties did not require skill or education.

custodial workers is common place.[23]

The instrumentalities (i.e. the mop, broom  and cleaning products) were supplied to Defendant Olivarez by the United States pursuant to the contract; but they were of inconsequential value (*Olivarez Deposition*, p. 75:12-76:5).[24]  Since these were of minimal value, their relevance is likewise inconsequential.  *Restatement (Second) of Agency* § 220, Comment k.  Likewise it is not determinative if the Defendant Olivarez believed they had a master and servant relationship.  *Restatement (Second) of Agency* § 220, Comment m.  Defendant Olivarez admitted that she was a contract employee (*Olivarez Deposition*, p. 6:20).  Furthermore, Defendant Olivarez stated that she thought she was employed by a contractor in Indiana, thus she not only knew that she was not an employee of the United States Postal Service, but she thought she was the employee of a company in Indiana (*Olivarez Deposition*, p. 13:11-16).

Defendant Olivarez fails to meet most, if any, of the law of agency guidelines that establish her as an employee.  Viewed in a light most favorable to the motion's opponent, Defendant Olivarez must be deemed an independent contractor.  *Anderson*, 477 U.S. at 255 106 S.Ct. at 2513-14.


**3.      Since Defendant Olivarez was a independent contractor at the time of Plaintiff's alleged fall, she was not acting within the course and scope of an employee.**

Defendant Olivarez knowingly entered into a contract and exercised a great deal of control as previously stated.  When compared with the relevant elements delineated in *Linkous, Rodriguez*, and the *Restatement (Second) of Agency* § 220, Defendant Olivarez meets almost none of the criteria

---

[23] *Exhibit C*, p. 1.

[24] *Exhibit C1*, p. 2.

in order to be deemed an employee. *Linkous*, 142 F.3d at 276; *Rodriguez*, 129 F.3d at 765; *Restatement (Second) of Agency* § 220. When viewed in the totality, especially in light of Defendant Olivarez's own admissions that she was under contract as a custodian (not to mention that she erroneously believed that she was under contract with an independent third party) along with the three signed contacts, there con be no finding other than that Defendant Olivarez was an independent contractor.

## VI. Conclusions

For the foregoing reasons, Defendants' respectfully prays that the Court deny Defendant Elena Olivarez's Motion for Summary Judgment because Defendant Olivarez cannot prove, as a matter of law, that the United States exercised exhaustive control over her employment at the Santa Rosa Post Office or that the law of agency establishes that she was (at the time of the alleged fall) an employee of the United States Postal Service.

Respectfully submitted,

MICHAEL SHELBY
UNITED STATES ATTORNEY

, AUSA,

For: STEVEN T. SCHAMMEL
Assistant U. S. Attorney
1701 W. Highway 83, Suite #600
McAllen, Texas 78501
(956) 618-8010
(956) 618-8016 (fax)
State Bar No. 24007990

12 of 15

Exhibits:
    A.      Olivarez Deposition
    B.      *Restatement (Second) of Agency* § 220
    C.      Contracts of Defendant Elena Olivarez and Declaration of Steven R. Carpenter
          1.      Cleaning Services Payment Authorization and Cleaning Service: Offer and Award (4-1-1994)
          2.      Contract/Order Modification (3-15-1996)
          3.      Contract/Order Modification (4-15-1998)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing the United States' Response to Defendant Elena Olivarez's Motion for Summary Judgment was mailed via First-Class Mail to the following:


Jason R. Mann
J. EDWARD MANN, JR. & ASSOCIATES
222 E. Van Buren, Suite 701
PO Box 231
Harlingen, TX 78551-0231

Attorney for Plaintiff

Pablo J. Almaguer
TEXAS RURAL LEGAL AID, INC.
316 S. Closner
Edinburg, Texas 78539

Attorney for Elena Olivarez

on this the ___7th___ day of ___MAY___, 2004.

Steven T. Schammel
Assistant U. S. Attorney