United States District Court
Southern District of Texas
ENTERED
JUL 2 6 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | |
|---|---|
| GLORIA GARCIA, a/k/a GLORIA GUZMAN<br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and YOLANDA PEREZ, as Postmaster, United States Post Office, Santa Rosa, Texas, and ELENA Olivarez, as an employee of the United States Post Office<br>Defendants. | CIVIL NO. B-02-017 |

## MEMORANDUM OPINION

Plaintiff Gloria Garcia ("Plaintiff"), a/k/a/ Gloria Guzman, slipped and fell in the post office at Santa Rosa, Texas, and brought suit pursuant to the Federal Tort Claims Act ("FCA") against the United States of America ("the United States"), Yolanda Perez ("Postmaster"), the Postmaster, and Elena Olivarez ("Olivarez"), who performed janitorial duties at the post office. Both Olivarez and the United States filed a Motion for Summary Judgment. The court entered an order on May 28, 2004, which **GRANTED** Olivarez's motion and **DENIED** the United States' motion. The court now memorializes its decision in this memorandum opinion so as to provide the parties a more specific explanation of its ruling.

I. FACTS

The parties vigorously dispute the relevant facts in this case. Plaintiff entered the post office on November 12, 1999, at approximately 7:15 a.m. to retrieve her mail. At that time, Olivarez was in the process of mopping the floor. Plaintiff alleges that, after spending approximately fifteen minutes at her post office box reading her mail, she turned to leave the post office and

slipped and fell. Plaintiff contends she fell because the floor was wet, and this condition was due to Olivarez's mopping. Plaintiff maintains that the portion of the floor upon which she fell was dry when she entered the post office. Plaintiff also claims that there was no sign warning of a wet floor displayed in the vicinity where she fell.

Conversely, Olivarez maintains that she had not yet mopped the location where Plaintiff had fallen at the time of the incident. Olivarez asserts that she had stopped mopping while Plaintiff was sorting through her mail at her post office box, and, because she was late in completing her duties due to waiting for Plaintiff to leave, she resumed mopping the edge of the hallway behind Garcia, making repeated trips from the bucket at the other end of the hall to the area where she was working. Olivarez claims she then mopped the east end of the hallway (to the left of Plaintiff) in which she and Plaintiff were located, moving westward with her back towards Plaintiff. Olivarez avers that she never heard Garcia fall and only became aware of same when she backed into her as she was mopping. Olivarez also claims that she placed a "Caution Wet Floor" sign near the front entrance of the post office, which is the only public entrance. Plaintiff maintains that she saw the sign only upon leaving the building.

Plaintiff brought suit pursuant to the FCA against the United States, the Postmaster, and Olivarez, averring the post office was negligent and seeking compensation for her alleged injuries. The United States substituted itself for Perez as a named defendant pursuant to the FCA. Olivarez filed a motion for summary judgment, alleging that her status as an employee of the post office who was acting within the course and scope of her employment at the time the alleged injury occurred mandated that the United States substitute itself for her as a defendant in this action. The United States also moved for summary judgment, arguing that because Olivarez was

an independent contractor, not an employee, it could not be held liable for her actions and that there were no genuine issues of material fact with respect to Plaintiff's claim of negligence.

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c). The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. Id. at 323-24. To carry this burden, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All of the evidence must be viewed in a light most favorable to the nonmovant. Id. at 255.

## III. DISCUSSION

### A. THE FCA

Olivarez in effect asks this court to certify that she was an employee of the United States acting within the scope of her employment and to substitute the United States as a defendant pursuant to 28 U.S.C. § 2679(d)(3). "It is elementary that the United States, as sovereign, is immune from suits save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (citation and internal quotations

3

omitted). The FCA constitutes a limited waiver of sovereign immunity. See 28 U.S.C. § 1346(b)(1). Under the FCA, Congress has waived sovereign immunity and has granted consent for the United States to be sued for money damages for acts committed by any "employee of the Government while acting within the scope of his office or employment...."[1] Id.; Logue v. United States, 412 U.S. 521, 527, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). The FCA, however, does not extend to acts of independent contractors. See U.S. v. Orleans, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Thus, if the act was not committed by an "employee of the Government," the court must dismiss Plaintiff's claim for lack of subject matter jurisdiction. See Broussard v. U.S., 989 F.2d 171, 174 (5th Cir. 1993).

Whether an individual is an employee or an independent contractor is a question of federal law. Cavazos ex re. Cavazos v. U.S., 776 F.2d 1263, 1264 (5th Cir. 1985). The primary factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual. See Orleans, 425 U.S. at 814; Broussard, 989 F.2d at 174; see also Logue, 412 U.S. at 527 ("[T]he distinction between the servant or agent relationship and that of independent contractor turn[s] on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract."). In addition to control, the following factors are relevant in determining whether an individual is an employee or an independent contractor: 1) the work is full-time employment by one employer; 2) whether the work is typically done by an

---

[1] "Employee of the Government" is defined to include "officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently, in the service of the United States, whether with or without compensation...." 28 U.S.C. § 2671.

4

employee in the locale rather than an independent contractor; 3) whether the work requires one who is highly educated or skilled; 4) whether the employer supplies the instrumentalities, tools, and the place of work for the person doing the work; 5) the employment is for a considerable period of time with regular hours; 6) the method of payment is by the hour or month; 7) whether the work is part of the employer's regular business; 8) whether the parties believe they have created an employment relationship; and 9) whether the principal is or is not in business. Rodriguez v. Sarabyn, 129 F.3d 760, 765 (5th Cir. 1997) (listing the factors in § 220 of the RESTATEMENT (SECOND) OF AGENCY).

Accordingly, the court, looking to these factors in determining whether Olivarez was an employee or an independent contractor of the post office at the time of Plaintiff's fall, finds that she was an employee. The extent of control that the post office exercised over the details of Olivarez's work weighs in favor of employee status. Her normal job duties included cleaning the lobby area by the mailboxes, the counter at the service desk, the sidewalk, the parking lot, and the bathroom. The United States' Motion at Exhibit 1, p. 8. The post office made Olivarez follow numerous, detailed regulations and guidelines when performing these duties.[2] Id. at Exhibit 1, p. 12 & Maintenance Handbook; Reply at Exhibit A1, pp. 3-11. The post office also set Olivarez's schedule, requiring her to work Monday through Friday between 6:00 a.m. and 8:00 a.m.[3] The United States' Motion at Exhibit 1, pp. 44, 59-60; Reply at Exhibit A1, pp. 3; Olivarez's

---

[2] The United States produced three contracts. The initial contract, dated April 7, 1994, contains thirty-one pages of conditions and terms and cites to other Postal Service manuals. The United States' Response at Exhibit 1. The other two contracts, dated March 12, 1996, and April 20, 1998, incorporate by reference the terms contained in the first contract. Id. at Exhibits 2 & 3.

[3] The post office eventually changed Olivarez's starting time to 6:30 a.m. The United States' Motion at Exhibit 1, p. 60.

Response at Exhibit 1, p.2. When Olivarez wanted to take a day off, she had to ask the Postmaster for permission to do so. The United States' Motion at Exhibit 1, p. 61.

Additionally, a post office employee was authorized to inspect Olivarez's work. The United States' Reply at Exhibit A1, pp. 10, 15. Olivarez also believed that the post office had control over her job duties. The United States' Motion at Exhibit 1, p. 40. Her schedule was determined under the guidance of the U.S. Postal Service's Housekeeping Postal Facilities Maintenance Handbook, which lists "frequency ranges" of the times she needed per week to clean certain areas and breaks down the minutes per square foot for the time it should take a custodian to clean an area. Olivarez's Motion at Exhibit 8; The United States' Reply at Exhibit A1, pp. 1-3 (Frequency of Performance Schedule).

With respect to the rest of the factors, the balance also weighs in favor of finding that Olivarez was an employee of the post office. Though she did not work full-time at the post office, she did not work at anther job while the post office employed her. The United States' Motion at Exhibit 1, p. 42. The cleaning of a post office is a part of the United States Postal Service's regular business, requiring detailed manuals indicating each of the duties of employees. Id. at Exhibit 1; Olivarez's Motion at Exhibit 8. Specifically, custodial duties performed at a post office are outlined in detail in the Postal Service's "Housekeeping Postal Facilities" Maintenance Handbook. Olivarez's Motion at Exhibit 8. Olivarez's duties did not require skill or education. The post office provided Olivarez with the instrumentalities necessary for her to perform her job—specifically Lysol, Windex, paper towels, a mop, a mop bucket, a "Wet Floor" sign and a broom. Olivarez's Motion at p. 9; Response at Exhibit 2; The United States' Reply at Exhibit A1, p. 3. The place she worked was at the post office itself, and she worked at the post office for

nine years with specifically set days and hours. She was also paid by the hour, rather than by the job.[4] The United States' Motion at Exhibit 2; Reply at Exhibit A1, p. 1; Exhibit A2.

Whether the parties believed they were creating an employer-employee relationship is unclear. The United States maintains that the contract entered into between it and Olivarez reflects her independent contractor status because Olivarez checked the box stating that she was a "self-employed contractor." The United States' Response at Exhibit 1, p. 20. However, the contract defines a "self-employed contractor," as an individual who "performs 51% or more of the work except vacations and emergencies." Id. This definition does not comport with the test adopted by the Fifth Circuit to determine whether a person is an employee or an individual contractor. Moreover, the record reflects that Olivarez believed that she was working for the post office under the contract. The United States' Motion at Exhibit 1, p. 6. Olivarez maintains she had originally entered into a contract with a company located in Indiana, but was then offered a position as a postal employee. Olivarez's Response at Exhibit 2; The United States' Motion at Exhibit 1, pp. 13, 34, 41, 57-58. Further, Olivarez testified at her deposition that, though she reads English "fairly well," "[t]here are certain words that I don't understand and then I have to ask questions." The United States' Motion at Exhibit 1, pp. 10-11; see also Olivarez's Response at Exhibit 1, p.1. The fact that Olivarez testified through a duly sworn interpreter at her deposition demonstrates that she is not comfortable in English. The United States' Motion at Exhibit 1, p. 2. Olivarez also claims she did not review the terms of the contract with anyone. Olivarez's Response at Exhibit 1, p. 1. It is therefore highly questionable whether Olivarez even

---

[4] The record does not reveal whether the United States ever withheld income tax or social security from Olivarez's payments.

7

understood the contract language or the import of the phrase "self-employed contractor."

Nevertheless, whether the post office and Olivarez believed they were creating an employee-employer relationship is but one factor the court must consider when deciding whether Olivarez was an employee of the post office. Based on the above summary judgment evidence, the court is persuaded that all of the relevant factors taken together demonstrate that she was an employee, not an independent contractor.

The court must next determine whether Olivarez was acting within the scope of her employment. This inquiry is governed by state law. Garcia v. U.S., 62 F.3d 126, 127 (5th Cir. 1995) (en banc). In this case, Texas law applies. Under Texas law, respondeat superior analysis determines whether conduct that constitutes negligence was within an employee's scope of employment. Williams v. U.S., 71 F.3d 502, 506 (5th Cir. 1995). Texas's general rule for the doctrine of respondeat superior for the tortious conduct of an employee is that the conduct must have occurred within the course and scope of the employee's general authority in furtherance of the employer's business and to accomplish the objective for which the employee was hired. Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Smith v. Universal Elec. Constr. Co., 30 S.W.3d 435, 438 (Tex. App.—Tyler 2000, no pet).

It is undisputed that when Plaintiff fell in the post office on November 12, 1999, Olivarez was in the middle of her Friday shift mopping the floor. Thus, as Olivarez was at the post office at the time scheduled by the post office engaged in the very duties for which she was employed, she was working within the scope of her employment at the time Plaintiff fell. Accordingly, the court certifies that Olivarez was an employee of the post office and was acting within the scope of her employment at the time the alleged injury occurred. The United States is therefore substituted for

Olivarez as the sole defendant in this case.

### B. Plaintiff's Negligence Claim

Under the FTCA, liability and damages are determined by the law of the forum state, here Texas, with the exception that punitive damages and prejudgment interest are not available. 28 U.S.C. § 2674. Whether the United States was negligent and caused Plaintiff's injury is a question of fact. Plaintiff is considered an "invitee" for purposes of the applicable Texas premise liability law. To prevail in a negligence action under a premises liability theory, Plaintiff must prove 1) actual or constructive knowledge of some condition on the premises by the post office; 2) that the condition posed an unreasonable risk of harm; 3) that the post office did not exercise reasonable care to reduce or eliminate the risk; and 4) that the post office's failure to use such care proximately caused Plaintiff's injury. Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983). Plaintiff can prove actual or constructive knowledge in three different ways: 1) with evidence the post office put the foreign substance on the floor; 2) with evidence the post office actually knew that the substance was on the floor; or 3) with evidence the substance was on the floor so long that, in the exercise of ordinary care, it should have been discovered and removed. Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812, 814 (Tex. 2002); McClure v. Rick, 95 S.W.3d 620, 626 (Tex. App.—Dallas 2002, no pet.).

Plaintiff and the United States advance differing theories of what happened, and factual disputes therefore exist, such as whether the floor Plaintiff slipped on was actually wet or dry, i.e., whether Olivarez mopped that portion of the floor and thus had knowledge of the condition; if the floor was wet, whether it posed an unreasonable risk of harm, and whether the post office exercised reasonable care to reduce or eliminate the risk. Summary judgment is therefore not

appropriate in this case.

## IV. CONCLUSION

Based on the foregoing, Olivarez's motion is granted and the United States' motion is denied. The judgment in this case is forthcoming.

Signed in Brownsville, Texas, this 26th day of July, 2004.

Andrew S. Hanen
United States District Judge