United States District Court
Southern District of Texas
ENTERED

DEC 2 2 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GLORIA GARCIA, a/k/a | § | |
| GLORIA GUZMAN | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. B-02-017 |
| | § | |
| UNITED STATES OF AMERICA, and | § | |
| YOLANDA PEREZ, as Postmaster, | § | |
| United States Post Office, Santa Rosa, | § | |
| Texas, and ELENA Olivarez, as an | § | |
| employee of the United States Post Office | § | |
| Defendants. | § | |

# ORDER

The above-referenced case came before this court for trial earlier in the year. The case

resulted from an accident in which Ms. Gloria Garcia a/k/a Gloria Guzman (hereinafter "Garcia" or

"Plaintiff") fell in the Post Office in Santa Rosa, Texas. She alleged the cause of her fall was: (1) the

government's negligence in mopping the floor and (2) that the post office premises were dangerous

due to a lack of lighting. She sued Elena Olivarez (hereinafter "Olivarez"), the person who actually

did the mopping, and the United States (also referred to as the "government" or "Defendant").[1] The

allegations leading up to this lawsuit are more specifically set forth in this Court's earlier opinion of

July 26, 2004, in which it granted the summary judgment filed by Olivarez which, in effect, held that

the United States was legally responsible for her alleged acts and/or omissions on the occasion in

question. The reasons for that ruling were delineated in detail in that Order and will not be repeated

herein.

---

[1] The United States has referred to itself in various pleadings as the United States and in other pleadings as the United States Postal Service. For simplicity, this Court will refer it just as the United States.

Following the issuance of that opinion in July of 2004, a bench trial between the Government and Garcia was held at which time this court heard or received all of the evidence in this case. This Order memorializes the court's findings of fact and conclusions of law with regard to that trial.

## I.   **Findings of Facts**

The court reaches the following factual findings:

1.   On November 12, 1999, the United States was the operator of the premises known as the Santa Rosa Post Office in Santa Rosa, Texas.

2.   The Santa Rosa Post Office was operated so that patrons could purchase stamps and other items from the United States of America and retrieve mail from post office boxes rented from the United States of America.

3.   On November 12, 1999, Plaintiff entered the Santa Rosa Post Office at approximately 7:15 a.m. for the purpose of retrieving her mail from a rented post office box. The court finds that Plaintiff was a business invitee of the United States of America at the Santa Rosa Post Office.

4.   Olivarez was already at the post office and was in the process of mopping the floors when Garcia arrived. She normally went to the post office to clean between 6:00 a.m. and 6:30 a.m. so that she could finish by 8:00 a.m. when the regular business hours started. On the day in question, she was late and was "in a rush" in order to finish by 8:00 a.m.

5.   Garcia and Olivarez were the only persons present at the location of the fall in the Santa Rosa Post Office when Plaintiff allegedly fell.

6.   Garcia did not pick up her mail everyday.

7.   A "caution wet floor" sign was placed by Olivarez next to the only public entrance. When Plaintiff walked through the front door to the post office in Santa Rosa to retrieve her mail, the floor on the path from the entrance to her post office box was dry. Garcia did not see or heed this sign. Olivarez had been instructed by post office officials to place her wet floor signs only at the entrance to the post office and not in the areas which she was in the process of mopping.

8.   Plaintiff admits that the wet floor sign was present, although she contended that she saw it only upon leaving.

9.   Plaintiff proceeded to her post office box and scanned through her mail for a few

minutes, during which time Olivarez mopped the area directly behind where Plaintiff was standing. Plaintiff was not warned of the wet condition of this area of the floor. Plaintiff did see, or at least sensed the presence of someone behind her.

10. The spot on the floor where the Plaintiff fell was dry when she entered and started to review her mail.

11. Garcia read through her mail while standing in front of her post office box.

12. As stated above, while Ms. Olivarez placed a "caution wet floor" sign at the entryway to the Santa Rosa Post Office, she never placed a "caution wet floor" sign in the area where Plaintiff fell. It was the policy at that post office to only locate the sign in the place it was located when Plaintiff entered the Santa Rosa Post Office on November 12, 1999. The official United States Postal Service Floor Care and Maintenance Manual states that "wet floor signs" should be freely used and be highly visible and that, if possible, the wet area should be roped off. The government through its Santa Rosa staff failed to adequately place signs or verbally warn Plaintiff of the dangerous condition created by the mopping of the floor.

13. Olivarez was going about her duties as a custodian while Plaintiff was present in the building.

14. Olivarez had also walked back and forth several times behind Plaintiff while Plaintiff was scanning her mail in order to wring out and refresh the mop she was using to mop the area behind the plaintiff.

15. The United States of America had actual knowledge through Olivarez of the dangerous condition, which was the freshly mopped floor behind Plaintiff while Plaintiff was getting her mail.

16. Plaintiff slipped and fell on the wet floor when attempting to exit the area of Plaintiff's post office box. Plaintiff's fall was caused by the wet condition of the floor.

17. As Olivarez continued mopping and walking backwards, she actually bumped into Plaintiff as she lay on the floor.

18. Plaintiff suffered trauma to the left side of her body and received an injury to her left knee as a direct result of this fall. While Plaintiff had earlier in the year suffered a minor injury to this same knee, the court finds the fall at the Santa Rosa Post Office to be a proximate cause of her injuries and the United States' failure to adequately warn her of the wet floor to be one of the proximate causes of that fall.

19. Garcia was jointly responsible with the government for her injuries due to her failure to heed the wet floor sign at the entrance to the post office. This failure to exercise

3

reasonable care was also a proximate cause of the fall and resulting injury to her left knee.

20.  The damage to the left knee was diagnosed as a torn lateral meniscus by Dr. Bliss Clark upon performing surgery on the left knee.

21.  Plaintiff endured a two month recover period, during which time she lost her job and lost wages in the amount of $1,750. She later found employment at a different job.

22.  Plaintiff incurred pain and suffering in the past which will continue into the future as a result of this fall, although some of the claimed pain and suffering were due to the fact that she had surgery on the right knee at the same time and that she had previously injured this same left knee. The damages not proximately caused by this fall will not be included below.

23.  Plaintiff has incurred medical expenses in the amount of $19,000.00 directly attributable to the injury to her left knee. While she had an earlier left knee injury, this condition had either resolved itself prior to the accident, or this accident greatly aggravated whatever residual problem remained.

24.  The left knee has not been satisfactorily repaired and needs an additional procedure which will cost $20,000.00, including all provider and hospital charges.

25.  The prospective recovery period for the needed procedure is six weeks.

26.  The only "defect" proved by Plaintiff was the outage of one lightbulb (or fluorescent tube). The court finds the premises not to be defective and further finds that if this condition was, indeed, a defect, it did not pose an unreasonable risk of harm nor did it proximately cause any damage or injury. The light was clearly sufficient for Plaintiff to read and review her mail for some time while Olivarez continued to mop.

## II.  Conclusions of Law

1.  Venue is proper in this court as any potential act or omission occurred within the Southern District of Texas, Brownsville Division.

2.  This is a case brought pursuant to the Federal Tort Claims Act. Liability is determined by the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995) (en banc).

3.  Elena Olivarez was not an independent contractor. (See Order of July 26, 2004).

4

4.      Texas law is the controlling law in this case since the alleged acts or omissions took place in Santa Rosa, Texas.  <u>Richards v. United States</u>, 369 U.S. 1, 9—10 (1962).

5.      In order to prevail in Texas in a negligence action under premises defect, the Plaintiff must prove:

    A.      actual or constructive knowledge of some condition on the premises by the owner/operator;

    B.      that the condition posed an unreasonable risk of harm;

    C.      that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

    D.      that the owner/operator's failure to use such care proximately caused the plaintiff's injury.

6.      This court finds that the plaintiff has failed to prove that the lighting or any other condition of the building (other than the wet floor) was defective at the post office at the time in question.

7.      Plaintiff has proved the elements of negligence with respect to the wet floor:

    A.      The premises operator (the Government) had actual knowledge of the wet condition of the floor on its property when it created the condition through the actions of an employee.

    B.      A wet floor is an inherently dangerous condition that poses an unreasonable risk of harm unless adequate warning is given.

    C.      The United States through Olivarez was negligent for creating a dangerous wet condition directly behind the plaintiff without providing an additional warning and, through Olivarez, it had notice of the existence of the dangerous condition.

    D.      The United States was also negligent through the management of the Santa Rosa Post Office for instructing Olivarez to only place "wet floor signs" at the entrance to the building and not place additional signs or warn individuals who were located where the actual mopping was taking place.

8.      The United States' negligence did proximately cause or contribute to Plaintiff's

injuries and/or damages. Since the court did not find that a premises defect existed at the Santa Rosa Post Office, Plaintiff's injuries were caused solely by the negligence of the government in mopping the floor without properly warning the patrons, and by Garcia's own failure to exercise reasonable care.

9.    The plaintiff was contributorily/comparatively negligent for her failure to observe and heed the wet floor sign placed at the entry to the post office and that negligence also proximately caused her injuries.

10.   The court finds the negligence attributable to the Government to be 60% and the negligence attributable to the plaintiff to be 40%.

11.   The parties agree that a timely administrative claim was filed and denied by the United States Postal Service.

12.   The plaintiff would be limited to the amount of damages claimed in her administrative claim under 28 U.S.C. § 2675(b) except no one has apprised this court of that amount nor entered the claim as evidence.

13.   The United States of America has waived its immunity in operating the United States Postal Service, Santa Rosa Post Office, and the Federal Torts Claims Act applies.

14.   The court finds Ms. Garcia to have suffered damages for past and future medical expenses in the amount of $39,000.00.

15.   The court finds Ms. Garcia to have suffered damages for past and future pain and suffering in the amount of $5,000.00.

16.   Ms. Garcia suffered a loss of income in the amount of $1,700.00.

17.   Taking into consideration her contributory/comparative negligence, Plaintiff's recovery in this matter is $27,420.00 plus post-judgment interest.

18.   The plaintiff is not entitled to pre-judgment interest due to 28 U.S.C. § 2674.

Counsel for Plaintiff is instructed to confer with counsel for the Government to reach an agreement on the rate of the post-judgment interest, and submit an agreed (as to form and as to the post-judgment interest rate) judgment reflecting these findings of fact and conclusions of law. The court will address any other issue pursuant to any timely filed motion for new trial.

Signed this the 22nd day of December, 2004.

Andrew S. Hanen
United States District Judge