IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED
FEB 0 7 2005
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| GLORIA L. GARCIA A/K/A GLORIA GUZMAN | § § § | |
| V. | § § | CIVIL ACTION NO. B-02-017 |
| UNITED STATES OF AMERICA, and YOLANDA PEREZ, as Postmaster, United States Post Office, Santa Rosa Texas, and ELENA OLIVAREZ, as an employee of the United States Post Office, Santa Rosa, Texas | § § § § § § § | |

## JUDGMENT

On June 21, 2004, the court called this case for trial. Plaintiff, GLORIA L. GARCIA A/K/A GLORIA GUZMAN, appeared in person and through her attorney and announced ready for trial. Defendant, UNITED STATES OF AMERICA, appeared in person and through its attorney and announced ready for trial. The court determined that it had jurisdiction over the subject matter and the parties to this proceeding.

1. There was no right to a jury trial on the issues before the court.

2. The court heard the evidence and arguments of counsel and rendered judgment for Plaintiff.

3. The court entered written findings of fact and conclusions of law after the trial of this matter.

  A. The court's **findings of fact** are as follows:

   1. On November 12, 1999, the United States was the operator of the premises known as the Santa Rosa Post Office in Santa Rosa, Texas.

   2. The Santa Rosa Post Office was operated so that patrons could purchase stamps and other items from the United States of America and retrieve mail from post office boxes rented from the United States of America.

Judgment-Page 1

3. On November 12, 1999, Plaintiff entered the Santa Rosa Post Office at approximately 7:15 a.m. for the purpose of retrieving her mail from a rented post office box. The court finds that Plaintiff was a business invitee of the United States of America at the Santa Rosa Post Office.

4. Elena Olivarez was already at the post office and was in the process of mopping the floors when Garcia arrived. She normally went to the post office to clean between 6:00 a.m. and 6:30 a.m. so that she could finish by 8:00 a.m. when the regular business hours started. On the day in question, she was late and was "in a rush" in order to finish by 8:00 a.m..

5. Plaintiff and Elena Olivarez were the only persons present at the location of the fall in the Santa Rosa Post Office when Plaintiff allegedly fell.

6. Plaintiff did not pick up her mail everyday.

7. A "caution wet floor" sign was placed by Elena Olivarez next to the only public entrance. When Plaintiff walked through the front door to the post office in Santa Rosa to retrieve her mail, the floor on the path from the entrance to her post office box was dry. Garcia did not see or heed this sign. Olivarez had been instructed by post office officials to place her wet floor signs only at the entrance to the post office and not in the areas which she was in the process of mopping.

8. Plaintiff admits that the wet floor sign was present, although she contended that she saw it only upon leaving.

9. Plaintiff proceeded to her post office box and scanned through her mail for a few minutes, during which time Elena Olivarez mopped the area directly behind where Plaintiff was standing. Plaintiff was not warned of the wet condition of this area of the floor. Plaintiff did see, or at least sensed the presence of someone behind her.

10. The spot on the floor where the Plaintiff fell was dry when she entered and started to review her mail.

11. Plaintiff read through her mail while standing in front of her post office box.

12. As stated above, while Ms. Olivarez placed a "caution wet floor" sign at the entryway to the Santa Rosa Post Office, she never placed a "caution wet floor" sign in the area where Plaintiff fell. It was the policy at that post office to only locate the sign in the place it was located when Plaintiff entered the Santa Rosa Post Office on November 12, 1999. The official Untied States Postal Service Floor Care and Maintenance Manual states that "wet floor signs" should be freely used and be highly visible and that, if possible, the wet area should be roped off. The government through its Santa Rosa staff failed to adequately place signs or verbally warn Plaintiff of the dangerous condition created by the mopping of the floor.

13. Elena Olivarez was going about her duties as a custodian while Plaintiff was present in the building.

14. Elena Olivarez had also walked back and forth several times behind Plaintiff while Plaintiff was scanning her mail in order to wring out and refresh the mop she was using to mop the area behind the Plaintiff.

15. The United States of America had actual knowledge through Elena Olivarez of the dangerous condition, which was freshly mopped floor behind Plaintiff while Plaintiff was getting her mail.

16. Plaintiff slipped and fell on the wet floor when attempting to exit the area of Plaintiff's post office box. Plaintiff's fall was caused by the wet condition of the floor.

17. As Elena Olivarez continued mopping and walking backwards, she actually bumped into Plaintiff as she lay on the floor.

18. Plaintiff suffered trauma to the left side of her body and received an injury to her left knee as a direct result of this fall. While Plaintiff had earlier in the year suffered a minor injury to this same knee, the court finds the fall at the Santa Rosa Post Office to be a proximate cause of her injuries and the United States' failure to adequately warn her of the wet floor to be one of the proximate causes of that fall.

19. Plaintiff was jointly responsible with the Defendant for her injuries due to her failure to heed the wet floor sign at the entrance to the post office. This failure to exercise reasonable care was also a proximate cause of the fall and resulting injury to Plaintiff's left knee.

20. The damage to the left knee was diagnosed as a torn lateral meniscus by Dr. Bliss Clark upon performing surgery on the left knee.

21. Plaintiff endured a two month recovery, during which time she lost her job and lost wages in the amount of $1,750.00. Plaintiff later found employment at a different job.

22. Plaintiff incurred pain and suffering the past which will continue into the future as a result of this fall, although some of the claimed pain and suffering were due to the fact that she had surgery on the right knee at the same time and that she had previously injured this same left knee. The damages not proximately caused by this fall will not be included below.

23. Plaintiff has incurred medical expenses in the amount of $19,000.00 directly attributable to the injury to her left knee. While she had an earlier left knee injury, this condition had either resolved itself prior to the accident, or this accident greatly aggravated whatever residual problem remained.

24. The left knee has not been satisfactorily repaired and needs an additional procedure which will cost $20,000.00, including all provider and hospital charges.

25. The prospective recovery period for the needed procedure is six weeks.

26. The only "defect" proved by Plaintiff was the outage of one lightbulb (or fluorescent tube). The court finds the premises not to be defective and further finds that if this condition was indeed, a defect, it did not pose an unreasonable risk of harm nor did it proximately cause any damage or injury. The light was clearly sufficient for Plaintiff to read and review her mail for some time while Elena Olivarez continued to mop.

B. The court's **conclusions of law** are as follows:

1. Venue is proper in this court as any potential act or omission occurred within the Southern District of Texas, Brownsville Division.

2. This is a case brought pursuant to the Federal Tort Claims Act. Liability is determined by the law of the place where the act or omission occurred 28 U.S.C.§ 1346(b); Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995) (en banc).

3. Elena Olivarez was not an independent contractor. (See Order of July 26, 2004 attached hereto as Exhibit A).

4. Texas law is the controlling law in this case since the alleged acts or omissions took place in Santa Rosa, Texas. *Richards v. United States*, 369 U.S. 1, 9-10 (1962).

5. In order to prevail in Texas in a negligence action under premises defect the Plaintiff must prove:

> a. Actual or constructive knowledge of some condition on the premises by the owner/operator;
>
> b. That the condition posed an unreasonable risk of harm;
>
> c. That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
>
> d. That the owner/operator's failure to use such care proximately caused the plaintiff's injury.

6. Plaintiff has failed to prove that the lighting or any other condition of the building (other than the wet floor) was defective at the post office at the time in question.

7. Plaintiff has proved the elements of negligence with respect to the wet floor;

    a. The premises operator (the Government) had actual knowledge of the wet condition of the floor on its property when it created the condition through the actions of an employee;

    b. A wet floor is an inherently dangerous condition that poses an unreasonable risk of harm unless adequate warning is given.

    c. The United States through Elena Olivarez was negligent for creating a dangerous wet condition directly behind the Plaintiff without providing an additional warning and, through Olivarez, it had notice of the existence of the dangerous condition.

    d. The United States was also negligent through the management of the Santa Rosa Post Office for instructing Elena Olivarez to only place "wet floor signs" at the entrance to the building and not place additional signs or warn individuals who were located where the actual mopping was taking place.

  8. The United States' negligence did proximately cause or contribute to Plaintiff's injuries and/or damages. Since the court did not find that a premises defect existed at the Santa Rosa Post Office, Plaintiff's injuries were caused solely by the negligence of the government in mopping the floor without properly warning the patrons, and by Garcia's own failure to exercise reasonable care.

  9. The Plaintiff was contributorily/comparatively negligent for her failure to observe and heed the wet floor sign placed at the entry to the post office and that negligence also proximately caused her injuries.

  10. The court finds the negligence attributable to the Government to be 60% and the negligence attributable to the Plaintiff to be 40%.

  11. Both Plaintiff and Defendants agree that a timely administrative claim was filed and denied by the United States Postal Service.

  12. The Plaintiff would be limited to the amount of damages claimed in her administrative claim under 28 U.S.C. §2675(b) except no one has apprised this court of that amount nor entered the claim as evidence.

  13. The United States of America has waived its immunity in operating the United States Postal Service, Santa Rosa Post Office, and the Federal Torts Claims Act applies.

  14. The court finds Plaintiff to have suffered damages for past and future medical expenses in the amount of $39,000.00.

  15. The court finds Plaintiff to have suffered damages for past and future pain and suffering in the amount of $5,000.00.

16. Plaintiff suffered a loss of income in the amount of $1,700.00.

4. Based on those findings of fact and conclusions of law, and taking into consideration her contributory/comparative negligence, the court ORDERS that Plaintiff GLORIA L. GARCIA A/K/A GLORIA GUZMAN, have and recover actual damages from Defendants, UNITED STATES OF AMERICA, the sum of Twenty Seven Thousand Four Hundred Twenty and No/100 Dollars ($27,420.00), plus post-judgment interest.

5. Additionally, the court finds that Plaintiff is not entitled to pre-judgment interest due to 28 U.S.C. § 2674.

6. Post-judgment interest is payable on all of the above amounts pursuant to 28 U.S.C. 1961, at the rate of 2.89 percent, from the date of this judgment is entered until the date this judgment is paid. (www.federal reserve.gov/releases.h15)

7. All costs of court expended or incurred in this cause are adjudged against the _defendant_.

8. The court orders execution to issue for this judgment.

9. The court denies all relief not granted in this judgment.

10. This is a FINAL JUDGMENT.

SIGNED _February 3, 2005_.

_____
U.S. DISTRICT JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

_____
JASON R. MANN,
Attorney for Plaintiff

_____, AUSA
_with permission_
For / Steven T. Schammel, AUSA
Attorney for Defendants

**Judgment-Page 6**